MARGARET AGNES URE *et al.*

*v.*

JOHN F. URE *et al.*

*Opinion filed October 23, 1906—Rehearing denied Dec. 5, 1906.*

1. JUDGMENTS AND DECREES—*general reversal of a decree abrogates it.* General reversal of a decree abrogates it, and, in effect, expunges it from the records, and the parties to the litigation are restored to their original rights.

2. SAME—*a party to a suit is presumed to know of errors in the record.* A party to a suit is presumed to know of all errors in the record, and, in case of general reversal, if he has derived benefit from the decree he must make restitution, if he has sold property thereunder he must account for the proceeds, and if he has acquired title under the decree the title is divested.

3. SAME—*innocent third parties may rely upon decree if court had jurisdiction.* Third parties may rely upon a judgment or decree if the court had jurisdiction to render it both as to the parties and the subject matter, and interests acquired by them in good faith and in reliance upon the judgment or decree will be protected, notwithstanding subsequent reversal.

4. SAME—*effect of sale between parties to an erroneous decree.* Upon general reversal of a partition decree, a sale between parties to the suit, covering property involved in the partition, must be set

aside and the grantor must restore to the grantee the net proceeds of the sale.

5. SAME—*when one party must account to others for proceeds of sale.* A party to a partition suit who sells the property set off to him to innocent third persons, must, upon reversal of the partition decree, account to the other interested parties for the value of the property at the time a new partition is had, excluding any improvements which may have been made by the purchasers.

6. SAME—*mortgagee without notice is entitled to protection.* A third party taking a mortgage upon land to which the mortgagor has an apparently good title under a partition decree is entitled to protection as an innocent purchaser, notwithstanding the subsequent reversal of the decree, if the court had jurisdiction of the parties and subject matter, and he is entitled to have the mortgage satisfied by a sale of the property covered by the mortgage.

7. COURTS—*probate court has original jurisdiction to appoint a conservator.* Under the constitution and the statute establishing probate courts, a probate court has original jurisdiction to declare a person a drunkard and spendthrift and appoint a conservator for him, notwithstanding the provision of the statute that when there has been a trial in the county court of an issue whether a person is a lunatic, drunkard or spendthrift, the record of the verdict and judgment shall be certified to the probate court and the issue need not be tried again.

8. DEEDS—*grantee of a spendthrift is not entitled to reimbursement.* A deed made by a person after the probate court has adjudged him to be a spendthrift and appointed a conservator for him is void under the statute, and the grantee, who is chargeable with notice by the record, is not entitled to re-payment of money expended for taxes, as a condition precedent to setting aside the deed.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

SHERMAN C. SPITZER, for appellants:

Parties to an erroneous judgment or decree are presumed to know of all defects in the proceedings. *McJilton* v. *Love,* 13 Ill. 486; *Wadhams* v. *Gay,* 73 id. 415; *Bank* v. *Doane,* 140 id. 193; *Powell* v. *Rogers,* 105 id. 318; *Hay* v. *Bennett,* 153 id. 271; Herman on Executions, sec. 328.

Where a decree is reversed and the cause is remanded without specific directions, then, as to all parties to the rec-

ord, the decree is entirely abrogated. It is, in effect, expunged from the record, and the cause stands in all respects in the court below in the same condition that it occupied before the trial, as if no decree had been entered. *Chickering* v. *Failes,* 29 Ill. 294; *Cable* v. *Ellis,* 120 id. 136; *Mohler* v. *Wiltberger,* 74 id. 163; *Railway Co.* v. *Harvey,* 178 id. 477; *Schumann* v. *Helberg,* 62 Ill. App. 218.

As to parties to the record, the effect of a reversal without specific directions is not only to vacate the erroneous decree, but also to restore the parties to their original rights and to divest any title acquired under such erroneous decree, unless it has been purchased by a stranger without notice. *McJilton* v. *Love,* 13 Ill. 486; *Hays* v. *Cassell,* 70 id. 669; *Wadhams* v. *Gay,* 73 id. 415; *Powell* v. *Rogers,* 105 id. 318; *Gage* v. *Directors,* 106 id. 508; *Bank* v. *Doane,* 140 id. 193; *Hay* v. *Bennett,* 153 id. 271; *Crawford* v. *Thompson,* 161 id. 161.

As to strangers to the record, their rights and interests acquired in good faith while a decree is in full force and unreversed are unaffected by a subsequent reversal for error. *Goudy* v. *Hall,* 36 Ill. 313; *Dunning* v. *Bathrick,* 41 id. 425; *Guiteau* v. *Wisely,* 47 id. 433; *Feaster* v. *Fleming,* 56 id. 457; *Conover* v. *Musgrave,* 68 id. 58; *Wadhams* v. *Gay,* 73 id. 415; *Barlow* v. *Standford,* 82 id. 298; *Hannas* v. *Hannas,* 110 id. 53; *Allison* v. *Drake,* 145 id. 500; *Crawford* v. *Thompson,* 161 id. 161.

CASTLE, WILLIAMS & SMITH, (BEN M. SMITH, of counsel,) for appellees John F. Ure and Sarah Ure:

In the partition suit and decree of 1892 John F. Ure took title from his mother, under the will, to all his share except one-fourth thereof by virtue of a former decree. His title vested immediately upon her death. He was entitled to one-half of the property. He received that, and so had no reason to complain. His title was not questioned and the amount

he was entitled to was not in controversy. He received his half, and was not, in law, permitted to question the decree by appeal or writ of error. In fact, there was no reason why he should. *Hedges* v. *Mace,* 72 Ill. 472; *Russell* v. *Bank,* 139 id. 538; *Gandy* v. *Coleman,* 196 id. 189; *Granat* v. *Kruse,* 213 id. 328; 2 Ency. of Pl. & Pr. p. 499, and note.

The only question presented to this court on writ of error and decided in *Ure* v. *Ure,* 185 Ill. 216, was whether Robert A. Ure took a fee or life estate under his mother's will. The reversal of the lower court on this question affected only the title of premises set off to Robert A. Ure under said will. It had no effect on title of the premises set off to John F. Ure. *Enos* v. *Capps,* 12 Ill. 255; *Rees* v. *Chicago,* 38 id. 322; *Railway Co.* v. *Reno,* 123 id. 273; *Alling* v. *Wenzel,* 133 id. 264; *Malaer* v. *Damron,* 31 Ill. App. 572.

ROBERT ZALESKI, for certain appellees:

Strangers to the record are not presumed to know of any defects in the record. They need only to look to the decree, and if the jurisdictional facts appear they may safely act thereunder. *Moore* v. *Hunter,* 1 Gilm. 317; *Goudy* v. *Hall,* 36 Ill. 313; *Fergus* v. *Woodworth,* 44 id. 373; *Dugan* v. *Follett,* 100 id. 582; *Mulford* v. *Stalzenback,* 46 id. 303; *Robbins* v. *Moore,* 129 id. 30; *Horshley* v. *Blackmoor,* 20 Iowa, 161; *Voorhees* v. *Bank,* 10 Pet. 449; *Reeves* v. *Kennedy,* 43 Cal. 643.

Mr. JUSTICE VICKERS delivered the opinion of the court:

1. This is an appeal from a final decree in the same case which was formerly reviewed upon a writ of error. (*Ure* v. *Ure,* 185 Ill. 216.) The will of Margaret Ure was then construed, the decree of the circuit court giving a different construction to the same was reversed, and the cause was remanded for further proceedings in accordance with the views expressed in the opinion then filed.

2. Margaret Ure was the owner of lots 1 to 7 and an undivided one-half of lot 8, in John C. Ure's subdivision of certain real estate in Rogers Park, in Cook county, a plat of which subdivision will be found in the statement of the case of *Henderson* v. *Hatterman,* 146 Ill. 555, at page 558; she also had a life estate in the other undivided one-half of said lot 8 with remainder to her two sons, Robert A. Ure and John F. Ure, in equal parts. By her last will she devised her real estate to her said sons, who survived her, devising to John F. Ure the absolute title in fee to one-half and to Robert A. Ure the life estate in the other one-half with remainder to his heirs, and created a trust for the management and control of the share devised to Robert and his heirs. After the death of their mother John had title in fee to one-half of all the lots in the subdivision, and Robert had a life estate in one-half of lots 1 to 7 and in one-fourth of lot 8 and the fee in the remaining one-fourth of said lot 8. By the decree of the circuit court, which was reversed on the writ of error, it was decreed that the trust had been executed by the Statute of Uses so as to vest the legal title in fee in Robert, and that the trustee and the minor daughter, Margaret Agnes Ure, had no right, title or interest in the property; but we held that the trust was an active one, not executed by the Statute of Uses, and that Robert took a life estate with remainder to his heirs. *Ure* v. *Ure, supra.*

3. The decree of the circuit court, which practically dismissed the trustee and minor child from the suit, was entered on January 4, 1892, and commissioners were afterwards appointed, who made partition, allotting to John the north seven acres, being lots 1 to 7, and to Robert the south five acres, being lot 8, subject to a right of occupancy of a cottage by Charles and Anne Condy, which right has terminated, and subject to $531 owelty to be paid to John. The reversal of that decree by this court was on April 17, 1900, and in the meantime, while the decree was in full force, not appealed from and unreversed, there were a number of

changes in the title, out of which numerous complications
have arisen. Both parties have made re-subdivisions and
Robert also executed trust deeds on part of the lands set off
to him.

4. On December 23, 1892, John made a re-subdivision of
lots 1 to 7 in a different manner from the original subdivi-
sion, and sold lots 1 to 6 in his re-subdivision, as follows:
On October 15, 1892, lots 1 and 2 to Augusta C. O. Becker
for $4000; on June 5, 1893, lot 5 to Johann C. Roessler for
$2000; on October 19, 1893, lot 6 to Robert Zaleski for
$2000, and on November 17, 1893, lots 3 and 4 to Henry
Koeber for $1700. Lots 1, 2 and 6 afterward passed to
Pauline F. Hatterman, the present owner. John retained
lot 7, on which he resides, and made improvements at a total
cost of $7000.

5. On April 5, 1893, Robert borrowed of William E.
Hatterman $1400, and secured the loan by a trust deed on
a tract 150 by 150 feet, in the north-west corner of lot 8.
On October 19, 1893, he conveyed to John lot J, in the south-
east corner of lot 8, for $3750, of which $531 was the owelty
awarded in the partition, $200 for a team of horses and the
balance in cash. In June, 1896, Robert made his re-subdi-
vision, excepting lot J, into seventeen lots, numbered 1 to 17.
On November 1, 1896, he borrowed from Hatterman the
further sum of $2600, secured by a trust deed on lots 1 to 17
of the re-subdivision. Out of the first Hatterman loan Rob-
ert received $571.25 cash, $617.55 was paid for special as-
sessments, and the balance went for commissions, abstracts
of title and other expenses. Of the second loan he received
$599.26 in cash, $1680.24 was paid for taxes and special
assessments, and the balance represented back interest on the
first loan, commissions, abstract, and releasing two trust
deeds on which other parties had refused to loan on account
of the condition of the title.

6. On January 6, 1897, the wife of Robert petitioned the
probate court of Cook county to appoint a conservator for

him, and afterward, upon a trial by jury, he was found to be a drunkard and a spendthrift, incapable of managing or caring for his estate. On March 19, 1897, there was a judgment to that effect, and Alexander Glanz was appointed conservator and qualified. Afterward, on March 3, 1898, Eugene W. Yeomans exchanged three practically worthless equities in Chicago real estate with Robert for his interest in lots 1 to 4 and 6 to 17 of the re-subdivision. Lot 5 was occupied by Robert as a homestead. At the time of the conveyance by Robert to Yeomans application was made to a title and trust company for a guaranty policy on the property conveyed by Robert, but the company refused to guarantee the title until the decree of 1892 should be affirmed by this court. The title and trust company having refused to pass the title except upon that condition, Yeomans agreed to bring the case to this court and secure an affirmance of the decree declaring the legal title to be in Robert, and that his minor daughter, Margaret Agnes Ure, and the trustee, had no interest in the property. Yeomans thereupon sued out a writ of error from this court in the name of said Margaret Agnes Ure, by L. H. Jennings, her next friend, who also appeared and filed a brief for her as plaintiff in error. Gilbert & Ripley, who were attorneys for Yeomans, appeared and filed a brief for defendants in error. The sole object of the writ of error was, not to secure a reversal of the decree, but, on the contrary, to obtain an affirmance of it, which was shown by the investigation in the circuit court after the cause was re-instated there. Mr. Jennings testified before the master that he did not write the brief for plaintiff in error; that it was brought to him by Mr. Gilbert, one of the attorneys on the other side, and Jennings signed it and it went in his name; that Yeomans was to be at the expense of taking the case up and having it affirmed by this court; that it was a question of fixing up the title, and the expectation was that a decision affirming the decree would be obtained from this court. According to his testimony the

same attorneys wrote the briefs on both sides, and the attorneys used the name of a minor child in a fraudulent attempt to secure an affirmance of a judgment against her interest.  The scheme was not successful, but the interests of the parties were declared by this court under fixed rules of law, in accordance with the terms of the will and the intent of the testatrix.  The difficulties now in the case grew out of the transactions before the decree was reversed, and raise peculiar questions not easy of adjustment.

7.  The remanding order was filed in the circuit court and the cause was re-docketed, whereupon an order was entered vacating the decree of January 4, 1892, and all subsequent proceedings thereunder, including the partition of the premises.  Supplemental pleadings were filed, setting up the facts which occurred after the entry of the original decree before the reversal.  During that time three children had been born to Robert, and they were brought in with the necessary additional parties.  Issues having been joined, the cause was referred to a master in chancery to take proofs, with his conclusions as to the facts and the law.  The master reported the evidence with conclusions that the re-subdivisions made by John and Robert of the parts set off to them, respectively, should stand on account of conveyances thereunder; that the title to the streets and alleys had vested in the city of Chicago; that as to lots 1 to 6 of John's re-subdivision, Pauline F. Hatterman was the owner of lots 1, 2 and 6, Henry Koeber of lots 3 and 4 and Johann C. Roessler of lot 5; that Hatterman had valid liens on lots in the part set off to Robert under his two trust deeds; that the conveyance from Robert to Yeomans should be set aside for fraud and because it was void under the statute, but that Yeomans should be re-imbursed for taxes and interest paid by him; that there should be another partition between John and the trustee for Robert and his children, or if the premises were incapable of partition they should be sold and the proceeds divided according to the rights of the parties as found by him,

and that on account of the premises yielding no income and the heavy burden of taxes and special assessments, interest and other carrying charges, the interests of the trust estate demanded the sale of the same and the investment of the proceeds. He found that the only use for which the premises were adapted was for subdivision into residence lots; that Robert or his children had no other means or property except such as was involved in the suit; that while John had expended about $7000 on lot 7, to which he retained title, and the improvements were worth about $5000 to him, they did not enhance the value of the property. He stated at length the accounts between the parties, which it is impracticable to repeat here. Louis D. Glanz had been appointed guardian for the minor children of Robert, and under an order of the probate court, made in 1901, had borrowed from Chris Hafner $1500, secured by a mortgage on lots 1 to 7 of John C. Ure's subdivision. Hafner became a defendant by leave of the court on February 1, 1905, and set up his rights under his mortgage. The master reported that said guardian received the proceeds of the loan and paid taxes on lots 1 to 17 of $160, and that Hafner's mortgage was a lien upon any property of the wards of said guardian.

8. The cause was heard on exceptions to the report, and a decree was entered confirming the titles of the parties to whom the conveyances had been made by John, as before stated, in accordance with the report of the master. The court refused to adopt the finding of the master with respect to the conveyance from Robert to Yeomans, and found the probate court was without jurisdiction to adjudge Robert a drunkard or a spendthrift or appoint a conservator; that Yeomans was a *bona fide* purchaser and took title to the property conveyed to him, which was confirmed subject only to the lien created by the Hatterman trust deeds. The court also refused to follow the findings of the master with reference to another partition, but set aside and vacated the order previously entered vacating the partition made under the reversed

decree and approved and confirmed the same. The decree set aside the deed of lot J from Robert to John, and awarded a personal decree against Robert, in favor of John, for the purchase price, $3750. Hafner's mortgage from the guardian was set aside as a cloud upon the title of John and his grantees, but was declared a valid lien on all of lot 8 of the original subdivision not conveyed to Yeomans. The title of the trustee to lot 5 of Robert's re-subdivision was established and confirmed subject to the liens of the several trust deeds or mortgages. The Hatterman trust deeds were foreclosed, and it was ordered that the premises to which they were subject be sold for the payment of the same, with costs and attorney's fees, and that said lot 5 be sold for one-half cash and the balance on one and two years' time at five per cent, and the proceeds, after the payment of costs, fees and expenses, be applied toward the payment of the Hafner mortgage, and if there should be a surplus it should be paid to the trustee. The accounts between the various parties were adjusted.

9. The effect of reversing the decree of January 4, 1892, was to abrogate it, and the cause stood in the circuit court precisely as it did before the entry of the decree. The decree was, in effect, expunged from the records and the parties to the litigation were restored to their original rights. (*McJilton* v. *Love,* 13 Ill. 486; *Chickering* v. *Failes,* 29 id. 294; *Cable* v. *Ellis,* 120 id. 136; *Aurora and Geneva Railway Co.* v. *Harvey,* 178 id. 477; Freeman on Judgments, sec. 481.) A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and if he has sold property erroneously adjudged to belong to him he must account to the true owner for the value. Titles acquired by parties to the record under an erroneous decree

or judgment will be divested by the subsequent reversal of such decree or judgment, but a different rule applies where a stranger to the proceeding, without notice, acquires rights under the decree before reversal. His title will not be affected. Innocent third parties have a right to rely upon a judgment or decree of a court having jurisdiction to pronounce it. They are not required to look beyond the question of jurisdiction, and if the decree is one which the court has jurisdiction to render both as to the subject matter and the parties, innocent purchasers acting in good faith will be protected, notwithstanding the subsequent reversal of the decree or judgment. *Montanye* v. *Wallahan,* 84 Ill. 355; *Thompson* v. *Frew,* 107 id. 478; *Crawford* v. *Thomson,* 161 id. 161.

10. It follows from the rules above announced that the sale of lot J by Robert to John, being a transaction between the parties to the erroneous decree, must be set aside and the grantor must restore to the grantee the net proceeds received from such sale.

11. It also follows from this same principle that the several conveyances made by John, enumerated in the fourth paragraph of this opinion, must be held to be valid and binding and the title of the several grantees confirmed, for the manifest reason that these several purchasers were not parties to the erroneous decree, and appear to have purchased in good faith, for a valuable consideration, without any notice of the defects for which the decree was subsequently reversed. John F. Ure having sold and conveyed these several lots and received the purchase money, will be required to account for the value of the property so sold at the time when the partition is made, excluding any improvements that may have been made by the purchasers or their grantees. In other words, this estate is entitled to have the value of the lots sold as they would have been had they remained a part of the estate until the time of the final partition, and John F. Ure having deprived the owners of this property by

his voluntary act in selling it, will, upon final accounting, be charged with the value thereof.

12. The mortgages made by Robert to Hatterman, dated April 5, 1893, for $1400, and November 1, 1896, for $2600, being valid mortgages, executed by the mortgagor upon real estate of which he was the apparent owner, as declared by the decree of January 4, 1892, must be paid out of the proceeds arising from the sale of the lots included in the mortgages, respectively. Hatterman occupies the position of an innocent third party, and is entitled to have his mortgages paid out of the property upon which he made his loans.

13. The conveyance of Robert Ure and his wife to Eugene W. Yeomans, described in paragraph 6 of this opinion, cannot be upheld. Yeomans does not occupy the position of an innocent purchaser. The fact that Robert Ure had been adjudged a drunkard and a spendthrift, and that a conservator had been appointed for him, was all a matter of record, of which Yeomans is conclusively presumed to have had notice. The decree of the circuit court finding that Yeomans was an innocent purchaser and entitled to be protected cannot be sustained. It was contended in the court below that the probate court had no jurisdiction to entertain the petition of Robert Ure's wife to have him adjudged a drunkard or a spendthrift or to appoint a conservator for him. Section 20 of article 6 of the constitution provides that probate courts, when established, shall have original jurisdiction in all probate matters, the settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts. A probate court having been established in Cook county, it had original jurisdiction, by virtue of the constitution, to appoint a conservator for Robert. The act providing for the establishment of probate courts also provides that they shall have original jurisdiction in the same matters specified in the constitution. (Hurd's Stat. 1899, p. 547.) It was held in the case of *Snyder* v. *Snyder*, 142 Ill. 60, that under the constitution and said act provid-

223—30

ing for probate courts the original jurisdiction vested in those courts. The provisions of the statute that where there has been a trial in the county court of an issue whether a person is a lunatic, drunkard or spendthrift, the record of the verdict and judgment shall be certified to the probate court and the issue need not be tried again, does not affect the original jurisdiction of the probate court. By the statute the conveyance to Yeomans, made long after the finding that Robert was a drunkard and a spendthrift and the appointment of a conservator for him, is declared to be void, and the court erred in not setting it aside. Yeomans paid some taxes, but he had notice by the record, which must have appeared upon any abstract of title, that his grantor could not make a conveyance, and there is no evidence which shows any equities in his favor. We do not think he is entitled to re-payment as a condition of setting aside the conveyance.

14. The mortgage of Louis D. Glanz, as guardian for the children of Robert Ure, to Chris Hafner for $1500, dated on the 15th day of February, 1901, was executed by order of the probate court, and has the character of a valid lien upon the interests of his wards in lots 1 to 7 in John C. Ure's subdivision, as set out in paragraph 7 of this opinion, and it should be paid out of the proceeds arising from the sale of the interests of the minors in said lots, but the minors are entitled to re-imbursement out of Robert's interests for the amount expended for taxes, which should have been paid by the life tenant. *Huston* v. *Tribbetts,* 171 Ill. 547.

15. The claim which John Ure has against Robert for the purchase money paid him for lot J is not a lien on any interest that Robert has in the real estate. It was not paid for the purpose of removing an encumbrance from the common property or for permanent improvements, but was paid as the purchase money for the title which Robert was supposed to have to lot J under the erroneous partition. This sale being void as between these parties to the record, the

same will be set aside and disregarded by the court in making a final decree herein. In the statement of account between Robert and John, Robert should account to John for the $3750, less the amount of owelty which he was adjudged to pay John under this erroneous decree. But this claim of John's is subordinate to the Hatterman mortgages, and if Robert's interest in the estate is not sufficient to pay it, the court should render a personal money decree against him for the deficiency.

15. In stating the account between Robert and the remainder-men, the Hatterman mortgages should be charged to Robert's interest and paid by him, with nothing charged to the estate in remainder unless it is made to appear that some portion of the proceeds of these loans was used to pay special assessments of such a character as to be of permanent benefit to the property as an estate of inheritance. If the court should find that some portion of the proceeds of the Hatterman mortgages was used for such special assessments, then the amounts should be apportioned ratably between the life tenant and the remainder-men under the rule announced in *Huston* v. *Tribbetts, supra.*

16. If, after John has discharged his liability to the estate, he shall have an interest equal to the value of lot 7, exclusive of the improvements put thereon by him, or if his interest is less than a fair cash value of said lot, and he desires to accept it and pay owelty, then, in view of the expenditures John has made on lot 7, the court may direct that lot 7 be set off to John at a fair valuation and exclude it from the sale, if it can be done without prejudice to the other interests involved. *Dean* v. *O'Meara,* 47 Ill. 120.

17. The decree of the circuit court is reversed and the cause is remanded, with directions to the court to proceed with a re-partition of said premises in accordance with the views herein expressed.          *Reversed and remanded.*