Lanson D. Miller et al., Plaintiffs in Error, v. Birdie Doran et al., Defendants in Error.

## Gen. No. 14,215.

1. CORPORATIONS—*status of stock certificates as to negotiability.* Stock certificates are not negotiable instruments. *Bona fide* purchasers or pledgees for value are, however, in some instances protected through the application of the principles of estoppel.

2. CORPORATIONS—*when not protected against delivery of certificates.* If a corporation is a party to a bill by which the true owner of stock stolen and pledged seeks to recover the same and to prevent the pledgee from being recognized by the corporation as the owner of the certificates in question, and such corporation is an active party in the litigation by answering the bill and demanding proof, it is not protected against delivery of such certificates to the pledgee by a decree rendered in favor of the pledgee which is subsequently reversed, nor is it protected by a judgment in favor of the pledgee rendered in a replevin suit to which the true owner of the certificates was not a party. A corporation, in such a situation, in order to protect itself, should await the final termination of the litigation or else should, by petition in the court in which it is pending, place itself in the positon of a stakeholder and acquire the same measure of relief which is accorded upon bill of interpleader.

3. PLEDGES—*when may be recovered by true owner.* If corporate stock has been stolen and pledged for value, the true owner may recover the same of the pledgee, even though such pledgee received the stock without notice of the rights of the true owner.

4. PLEADING—*when answer overrules plea in chancery.* If an answer filed to a bill in chancery was not in support of a plea likewise filed to such bill, but was independent of such plea, the answer being to the entire bill operates to overrule the plea.

5. ABATEMENT—*when plea of former suit pending inappropriate.* The plea of prior suit pending at law is not the proper method of directing the attention of a court of chancery to the pendency thereof.

6. CHANCERY—*jurisdiction to protect stockholder whose certificates have been stolen.* The claim of an owner of stocks to recover his stolen certificates which are an *indicia* of title and worthless as against him in a stranger's hands, though capable of causing him considerable litigation, as well as his claim against the corporation to continue to be recognized by it as a stockholder and for an accounting of dividends wrongfully paid to another, has always been held to be one of equitable jurisdiction.

7. DECREES—*duty of compliance.* It is the duty of a party against whom a decree in chancery has been rendered, to be ready at all times to obey such decree. If such party place himself in a position where he can no longer specifically obey, he must then put the party in whose favor the decree has been rendered in the same position as near as may be as if he had obeyed.

8. DECREES—*when appropriate in action to recover ' stock certificates.* *Held*, that the decree in this case properly directed that the defendants return to complainant the certificates of stock in question or to pay the value of such stock on the day when the decree was entered.

Bill for injunction. Error to the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed in part, reversed in part and remanded with directions. Opinion filed November 19, 1909. Rehearing denied December 3, 1909.

Statement by the Court.    Birdie Doran bought stock in the United States Steel Corporation, endorsed the certificates in blank because her husband told her that this would avoid a confusion in her affairs if she died without a will, and kept them in a safe deposit box to which she and her husband had access. Without her knowledge, the husband took them from the box and pledged them to plaintiffs in error, who, for the purposes of this case, may be assumed to be *bona fide* pledgees, although Mrs. Doran has alleged that they took them on gambling transactions. As soon as she learned of the misappropriation, she demanded them back and notified the United States Steel Corporation and the Hudson Trust Company, its transfer agent, co-defendants in error, not to recognize plaintiffs.

Thereupon plaintiffs sent the certificates to the Hudson Trust Company for transfer and brought their

bill of complaint to enjoin Mrs. Doran from asserting her claim of ownership and to require the corporations to transfer the stocks on their books.

The corporations answered demanding strict proof.

Mrs. Doran having answered, filed her cross-bill against the plaintiffs and the corporations, demanding the return of the certificate from whichever of them might then have the possession thereof, that the plaintiffs be enjoined from making any claim thereto and that the United States Steel Corporation pay over any accrued dividends. No answer by either corporation appears in the record, but in the decree on bill and cross-bill it is recited that the cause came on to be heard *inter alia* on the answers of the United States Steel Corporation and the Hudson Trust Company to said cross-bill.

The decree entered August 20, 1904, found the title in plaintiffs and dismissed the cross-bill.

On writ of error, this court found that Mrs. Doran had never lost title to the certificates, reversed the decree and remanded the cause. The facts will be found more fully stated in Doran v. Miller, 124 Ill. App. 551.

On the subsequent hearing, after amended and supplemental pleadings had been filed and additional evidence heard, the court found that Birdie Doran had never lost title to the certificates and had been wrongfully deprived of the possession of them by the refusal of the plaintiffs and co-defendants to deliver them on demand made in November, 1903; that in November and December, 1904 (being subsequent to the entry of the original decree and before the writ of error had been sued out) the corporations at plaintiffs' request had cancelled the old certificates and issued successively new certificates that reached the hands of *bona fide* purchasers; that as between plaintiffs and Doran, plaintiffs thereby became obligated to return the equivalent of said certificates and that Birdie

Doran was entitled to the value of dividends declared in February, 1904, and at subsequent quarters, none of which had been paid to her but which had been paid to the persons who, at the times when said dividends were declared, were registered on the corporation books as share owners; that the cross-bill as to some certificates not mentioned in the original bill was not germane and moreover, as against the co-defendant corporations, the entire cross-bill was without equity. Thereupon the court dismissed the original bill and dismissed without prejudice so much of the cross-bill as was found not germane, decreed as against the individual cross-defendants, now plaintiffs in error, that they give cross-plaintiffs certificates for an equivalent number of shares and on default pay over an amount found to be the market value at the date of the decree and dismissed the cross-bill as against the two corporations, cross-defendants, for want of equity.

Complainants appealed and question the correctness of the finding against them on the matter of title, the rule adopted by the trial court as the measure of damages, and right to any relief under a cross-bill after the original bill is dismissed.

Cross-complainant Doran has assigned cross-errors on the dismissal of so much of the cross-bill as was found not germane and on the findings and dismissal of the cross-bill as against the corporations.

GLENN E. PLUMB, for plaintiffs in error.

T. F. LARAMIE, WOLFF & ROTHSCHILD, KNAPP & CAMPBELL and WILLIAM BEYE, for defendants in error.

MR. JUSTICE MACK delivered the opinion of the court.

We find nothing in the additional evidence to change the conclusions reached by this court on the former hearing, and we are therefore bound by the former

decision of this court. In any event, we concur in the conclusions there stated.

Whether or not corporate stock certificates should be made more negotiable than they now are, so as to protect a *bona fide* purchaser taking them under the circumstances of this case, is a question that the Legislature will have to consider when the Stock Certificate Act drafted by the Commissioners on Uniform State Legislation is presented to them. That act provides for this protection to a *bona fide* purchaser or pledgee. But though some measure of negotiability has been worked out without legislation, through the application of principles of estoppel, no case cited or that we have been able to find would protect these complainants.

In the case nearest to this in its facts, Bangor Elec. L. & P. Co. v. Robinson, 52 Fed. R. 520, it appeared that Robinson had certain business relations with one Williams, a broker, and that they had in common a safety deposit box, to which each had access; that Robinson placed the certificate therein, endoresd in blank, and that, without his authority or knowledge, Williams abstracted it therefrom, and transferred it to Mrs. Lee, as collateral security for a loan.

The court said: "Certificates of stock indorsed in blank are so far of a negotiable character that they ordinarily pass from hand to hand, that they are not subject to *lis pendens* and that, as stated by Daniel, in order to effectuate the ends of justice and the intention of the parties, the courts ordinarily decree a better title to the transferee than actually existed in the transferrer. Nevertheless, we do not find that any court of authority has ever gone so far as to hold that the holder of them may lose the title to such as may be stolen from him, as he may of negotiable promissory notes, bills, scrip, or bonds, payable to bearer or indorsed in blank.

"* * * The contest at bar relates to the mere negligence of the original holder, and how far this may prevent him from reclaiming his property. At first

it occurred to the court that, inasmuch as Robinson had seen fit to leave this certificate in such condition as to indicate that somebody was authorized to acquire it and fill in the indorsement, he was barred; but the court is unable to find any authorities sustaining this suggestion, and is compelled to treat this certificate, indorsed in blank and stolen, as it would any other stolen property, aside from strictly negotiable securities.''

In The Farmers' Bank et al. v. The Diebold Safe & Lock Co. et al., 66 Ohio St. 367, at 378 the court said:

''The case at bar may be summed up in a paragraph. The secretary of the corporation was a holder of its stock represented by a valid certificate. He pledged the stock to the Company as security for a debt owing to it, and assigned the certificate in blank and delivered it so assigned to the Company. It was then placed by the president in his drawer in the Company's safe. Later the secretary, by private agreement with the president, sold the certificate to him outright. Without fault of the Company, or of the president, the certificate had become mislaid. Some time after, the secretary found and fraudulently abstracted the certificate from the drawer and pledged it for a private debt to an innocent taker who accepted the security without inquiry. This pledgee took no title.'' See, too, Knox v. Eden Musee Co., 148 N. Y. 441, at 457 et seq.

2 Cook on Corporations, 6th ed., sec. 437, says:

''It is extremely doubtful whether a purchaser of a certificate of stock which was indorsed in blank, and which has been lost by the owner and found by another who sells it, or which has been stolen by the latter, would be protected in his purchase, even though he buys in good faith. In a case of negotiable paper, such a purchaser would, of course, be proteced. But probably the purchaser of the certificate of stock would not be. No case holds that he would be protected, while many hold that he would not. If the real owner was

guilty of gross negligence, perhaps the purchaser from the thief or finder of the certificate indorsed in blank would be protected. In one case this question of negligence was submitted to the jury."

The plaintiffs in error, although assigning for error the sustaining of a demurrer to the plea of prior suit pending, have not urged this point in their brief.

The so-called demurrer to a plea was doubtless regarded by the court as equivalent to a motion to set the plea down for argument. The overruling of the plea may be sustained on several grounds: First, the answer was not an answer in support of the plea but independent of the plea, and being to the entire crossbill it, of itself, overruled the plea; second, the plea of the prior suit pending at law seems not to be the proper method of directing the attention of the court to the pendency of another suit at law.

In Way v. Bragaw, 16 N. J. Eq. 213, at 217, the court says: "A plea of another suit pending for the same cause in bar of a suit in equity, can only be of a suit pending in the same or in some other court of equity.

"Where a suit is pending for the same cause in a court at law, all that the defendant can ask is an order putting the complainant to his election, whether he will proceed at law or in equity." (Citing authorities.)

Plaintiffs in error contend that the original bill having been dismissed for want of equity, the crossbill which, it is alleged, sought relief on a purely legal claim, should also have been dismissed. But firstly the cross-defendants answered the cross-bill and secondly the claim of an owner of stocks to recover his stolen certificates which are an *indicia* of title and worthless as against him in a stranger's hands, though capable of causing him considerable litigation, as well as his claim against the corporation to continue to be recognized by it as its stockholder and for an accounting of dividends wrongfully paid to another, has always been held to be one of equitable jurisdiction. The owner may sue in tort as for a conversion but he

is not compelled to do so, and thereby give up his position as stockholder. Treadwell v. Clark, 190 N. Y. 50, at 57; Penna. Co. v. Franklin Fire Ins. Co., 181 Penns. St. 40.

As between Miller and Bostedo and Mrs. Doran, the only remaining question is as to the measure of damages.

Whatever the true rule of damages may be in an action of trover for converting stock, the cross-bill under which the relief was decreed in this case was for the recovery of the possession of specific certificates in the possession or control of the cross-defendants at the time the cross-bill was brought and the original —but subsequently reversed—decree was entered.

If the contentions of the cross-bill were correct, the cross-defendants had property belonging to the cross-complainant, which it was their duty, in equity, specifically to return. That they subsequently incapacitated themselves from obeying the decree finally entered, is no excuse. It was their duty to be ready at all times to obey the decree which a court of equity would enter if it found the facts against them. If they cannot now obey specifically, then they must put the cross-complainant in the same position, as near as may be, as if they had obeyed. The decree properly directed that they return to her so many shares of stock, or pay the value of the shares of stock on the day that the decree was entered.

In Fowle v. Ward, 113 Mass. 548, the court says: "In the common law action of trover, the rule of damages is undoubtedly the value of the chattel in controversy at the time of conversion. So also, in an action for non-fulfillment of a contract to deliver stock, the measure of damages would ordinarily be the value at the time when it should have been delivered. * * * But, in the case before us, the plaintiff seeks and is entitled to have the specific equitable remedy of being replaced in his original possession. His claim is not damages for the breach of a contract or for the

wrongful conversion of property, but to compel the reconveyance of shares which ought to be in the defendant's hands at this moment.''

The original bill sought to establish complainants' claim to certain specific certificates representing stock still standing in Mrs. Doran's name. The cross-bill sought to hold the original complainants liable not only for these but also for other certificates which had theretofore been surrendered and cancelled and for which new certificates were outstanding in the hands of *bona fide* purchasers, but disclaimed any attempt to hold the corporations liable for the latter class of certificates. Cross-complainants, while assigning error on the finding of the trial court that this claim is not germane to the original bill, fail to raise the question in their brief and have therefore waived it. We are, in any event, inclined to concur in the view adopted by the trial court that the claim is not germane.

So far, therefore, as the controversy is between Miller and Bostedo as plaintiffs in error, and Birdie Doran as defendant in error, the decree will be affirmed.

As between Birdie Doran on the one hand and the Steel Corporation and Trust Company on the other hand, the contention is that as they were parties to the original proceedings both in the trial and appellate courts, the reversal of the original decree rendered it an absolute nullity as to them as well as to the original complainants. Ure v. Ure, 223 Ill. 454.

The companies on the other hand contend that they were in the position of stakeholders; that they had no interest in the original decree and were not in a position enabling them to appeal therefrom; or, if perchance they had the right to appeal, at least they could not have assigned as error that the decree confirmed complainants' title and denied Doran's title to the shares, and that as they were directed by the original decree to recognize Miller and Bostedo, they would

have been in contempt of court had they refused to do so.

After the original decree and before the writ of error had been sued out, the counsel for the companies, acting cautiously in their interest, endeavored to secure a bond from Miller and Bostedo before recognizing their title. Failing in this, he adopted the suggestion of complainants' counsel, under which, through a replevin suit against the companies and their agent who had physical possession of the certificates, to which Birdie Doran was not made a party and of which she was not notified so as to enable her to protect her claim by defending the right of the corporations, as against the plaintiffs, to retain the certificates, one of the complainants, Bostedo, obtained the physical possession of the certificates. Thereupon the companies transferred the stock on their books upon the demand of the complainants.

Birdie Doran contends that this replevin suit was a fictitious proceeding and a subterfuge; that the stock was transferred on the books of the company, not because of the original decree in the case ordering this to be done, but voluntarily, pursuant to arrangement between the companies and the original complainant.

We cannot see any wrong in the action of the counsel for the Steel and Trust companies. He desired protection for his clients against every possibility of injury. If, under the original decree, the Steel Company would be justified in at once recognizing Miller and Bostedo's title or even if they would be protected had they recognized it only as an alternative to accepting punishment for contempt of court, the fact that they recognized it only after the replevin proceedings would not put the companies in any worse position.

We do not see any inconsistency in the plea to the replevin suit in which the original decree was set up coupled with the allegation that Doran had notified them of her intention to sue out a writ of error and would hold them liable for damages and claiming there-

fore the right to retain possession until a final decision should be reached, and their present position that after this plea was adjudged bad and the possession was awarded the plaintiff in replevin, they were then compelled to obey the original decree.

Nor is a corporation in any true sense of the word a trustee for each registered shareholder, so as to impose some fiduciary obligation upon it to protect him as against the holder of the certificate. A shareholder is the owner of a chose in action of a peculiar nature; the corporation is the obligor in that chose in action. It owes him a duty similar to that which any creditor owes a debtor upon a non-negotiable chose in action. It cannot escape payment of the debt, it cannot deny his right as shareholder unless with his consent or in some way that would create an estoppel against him, his right has become barred or by a novation has become vested in another. The claim made by the corporations is that by the former adjudication as between complainants and defendants the former were held to have become the shareholders. If the corporations had not been parties to the record, if the contest as to the property had been solely between the two claimants, no trust obligation toward Doran would have forbidden the corporations, after such an adjudication, to recognize Miller and Bostedo's rights.

Nor can we assent to the proposition that because the corporations are foreign so much of the original decree as directed them to transfer the stock is a nullity and therefore affords them no protection. This point is raised for the first time in the reply brief of counsel for Birdie Doran, and as has been frequently held by the Supreme Court, it should not now be considered. Harrow v. Grogan, 219 Ill. 288, at 294.

Waiving this, however, it is our opinion: First, that when no objection is made by the foreign corporation to the jurisdiction of the court to decree the transfer of stock, none of the other parties can raise it; second, that in a bill such as this to determine the owner-

ship as between two claimants of stock and to compel the corporation to recognize the victor, no question of the internal management of the corporate affairs is involved, in the absence of some contention on the part of the corporation as against either or both of the claimants; and third, if the original decree had been a nullity as against the corporations, then, *a fortiori* they would be entitled to recognize the victor under it, irrespective of whether it was subsequently reversed or affirmed on writ of error.

But the question still remains whether the reversal of the original decree nullifies it not only as to Miller and Bostedo but also as to the corporations so as to deprive them of any protection that they would enjoy had they been strangers and not parties to the record. In other words: Is a stake holder under the circumstances of this case, though technically a party to the record, in the same position as a stranger, and were these corporations really in the position of stake holders in this case?

To obtain the protection accorded a stake holder, one must act as such, act promptly and take no other position. In this case, the corporations could have filed a bill of interpleader, turned the certificates over to the court or to its receiver and compelled the claimants to litigate their rights. Dickinson v. Griggsville Nat'l Bank, 209 Ill. 350; 2 Cook on Corporations, 6th ed., secs. 387, 407.

After one claimant had commenced suit against the other and the stake holder, a bill of interpleader would probably be improper; but, by motion or petition in the suit, the same results could have been obtained. The court should and doubtless would then have permitted a surrender of the documents or the issuance of new ones to its receiver and a dismissal of the corporations from the case. McLennan on Interpleader, p. 12, and cases cited. No such step was taken. Instead, the corporations answered the bill which sought as against Doran an adjudication of title and as against

them the transfer on the books, by neither admitting nor denying the allegations but demanding strict proof.

Then the cross-bill was filed. What, if any, answer was made thereto by the corporations does not appear from the record, except the bare recital in the original decree, that the cause was heard on cross-bill and answer by all defendants. We cannot assume that this answer was any different from the answer to the original bill. By the cross-bill the stockholder of record demanded back her property, her certificates, from the holders of them, the corporations, together with dividends declared thereon. That the corporations had received them merely for transfer, made them no less the actual holders. When they refused to deliver them up to the true owner, they were subject to an action at law or a bill in equity. Inasmuch, however, as the other claimants were defendants to the cross-bill, the corporations could still have answered and, by petition or motion, have secured the benefits of a complainant in a bill of interpleader. But again they failed to act. They therefore remained in the case as defendants demanding, according to the pleadings, strict proof as against themselves.

Moreover the plea of the corporations in the replevin suit recites that in this chancery suit they "claimed the right of possession of said certificates of shares until it was determined which of said parties was justly entitled to the same." Such a claim to the right of possession is inconsistent with the position of an interpleader who wants to give up the property to the court and get out of the litigation.

While therefore the corporations might have been out of the litigation before the final decree and might have been entitled to the same protection that is granted to a stranger who takes under a decree not appealed from or not stayed by writ of supersedeas, had they acted in the manner prescribed by law, we are constrained to hold that as active parties to the record

they are subject to the general rule that a reversal nullifies the former decree. Ure v. Ure, 223 Ill. 454.

It follows that the court erred in dismissing the entire cross-bill as to them and in not decreeing that the corporations, as well as Miller and Bostedp, deliver an equivalent amount of stock or pay the value thereof to said Doran.

The decree will be affirmed in part and reversed in part and the cause remanded to the Circuit Court with directions to that court to modify the decree in accordance with the views herein expressed.

*Affirmed in part, reversed in part and remanded with directions.*