M. F. Dunlap, Defendant in Error, v. Chas. M. Peirce
et al., Plaintiffs in Error.
Chas. M. Peirce and Ella B. Peirce, Plaintiffs in Error,
v. M. F. Dunlap et al., Defendants in Error.

Gen. No. 8,447.

October term, 1930. Heard in this court at the
Opinion filed January 26, 1931.

H. J. THOMPSON, GEORGE C. WEAVER and CHAS. M.
PEIRCE, for plaintiffs in error.

JOHN J. REEVE and BELLATTI & MORIARTY, for defendant in error.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

In this case originally M. F. Dunlap, defendant in error, filed a bill in the circuit court of Pike county, Illinois, to foreclose a mortgage against the plaintiffs in error. Plaintiffs in error answered the bill and filed a cross-bill, making M. F. Dunlap, William Petefish, Otis E. Taylor and Claude C. Petefish defendants to the cross-bill. Answers and replications were filed, evidence taken, and a decree rendered by the circuit court of Pike county in favor of M. F. Dunlap, defendant in error, for the foreclosure of his mortgage. The plaintiffs in error removed that cause to this court and upon hearing this court reversed the decree of the circuit court of Pike county, with directions to dismiss the bill of M. F. Dunlap for want of equity. M. F. Dunlap, together with his codefendants in the said cross-bill, removed the cause to the Supreme Court of this State, and upon hearing in that court the court reversed the judgment of the Appellate Court and reversed the decree of the circuit court of Pike county, and remanded the cause to the circuit court of Pike county, using the following language: "As such assignee, Dunlap is entitled to foreclosure of this mortgage in the sum of $20,000 with interest from January 1, 1925, less such credits, if any there be, as may be shown by the report of the receiver appointed by the court.

"The decree of the circuit court and the judgment of the Appellate Court are reversed, and the cause remanded to the circuit court, with directions to enter a decree for the foreclosure and sale in accordance with the views herein expressed."

Defendant in error M. F. Dunlap obtained the mandate from the Supreme Court and upon proper

notice to the plaintiffs in error, the mandate was filed, together with a motion by Dunlap to reinstate the cause. Plaintiffs in error filed objections to the reinstatement of the cause, which upon hearing in the circuit court were overruled and the mandate ordered filed and the cause reinstated. Thereupon plaintiffs in error filed a petition and later, by leave of court, filed an amended petition. M. F. Dunlap, defendant in error, filed his motion to strike the petition of the plaintiffs in error from the files on the ground that the petition prayed the circuit court to enter a decree different from the decree directed to be entered by the Supreme Court, and after the amended petition was filed amended his motion to apply to all that portion of the amended petition which set up facts and prayed the circuit court to enter a decree other than the decree directed to be entered by the mandate of the Supreme Court, and answered the other parts of the petition. The petition did not waive the answer under oath, hence Dunlap's answer to the amended petition was under oath.

The circuit court sustained the motion to strike the amended petition so far as it prayed for a decree different from the decree authorized by the mandate of the Supreme Court and upon a final hearing the circuit court dismissed the petition of the plaintiffs in error for want of equity.

The mandate of the Supreme Court required that the circuit court should ascertain what, if any, credits should be given to the plaintiffs in error as shown by the report of the receiver. The receiver filed his report and afterwards, by leave of court, filed an amended report. The plaintiffs in error filed objections to the report of the receiver and evidence was heard upon said objections. Upon hearing the objections and the evidence, the circuit court overruled the objections and approved the amended report and en-

tered a decree of foreclosure in favor of M. F. Dunlap for $20,000 with interest from January 1, 1925, and the court found that there was no credit to be allowed as shown by the report of the receiver.

A further statement of the facts is to be found in *Dunlap v. Peirce,* 253 Ill. App. 1, and *Dunlap v. Peirce,* 336 Ill. 178.

It is further shown by the petition filed by the plaintiffs in error in the court below, after the remanding order was entered in that court, that no supersedeas having been obtained in the Pike county circuit court when the original proceedings were brought to this court that the master in chancery, in accordance with the decree of the circuit court of Pike county, advertised the lands described in the bill of complaint for sale, and sold the same on August 13, 1927; that M. F. Dunlap at said sale bid off the property described in the bill of complaint, subject to a first mortgage of $60,000 in favor of the Prudential Life Insurance Company, for the sum of $66,000; that the original bill of complaint to foreclose was in the name of M. F. Dunlap, sole complainant, who sought to foreclose indebtedness evidenced by notes amounting to $90,000 principal and interest thereon, secured by second mortgage on the tract of land described in the original bill of complaint; that the original decree in said foreclosure suit which came by writ of error to this court fixed the amount of the indebtedness in favor of complainant at $88,379.69 and directed the sale of the land to satisfy the decree, subject to the first mortgage of $60,000. The amended petition filed by plaintiffs in error in this cause when the cause was reinstated after the decision by the Supreme Court, sets out the various steps of litigation and the fact that the master sold the land in the bill described on August 13, 1927, to M. F. Dunlap for $66,000, subject to the first mortgage; that the said master made settle-

ment with the purchaser, M. F. Dunlap, by the said M. F. Dunlap paying cash to the master in the sum of $719.50, being the costs taxed by the master in said foreclosure suit and by receipting to said master for the residue, amounting to $65,280.50, and the master made a report of sale; that immediately after said settlement the master issued to the purchaser, M. F. Dunlap, a certificate of sale and recorded a duplicate certificate with the recorder of Pike county in due form; that at the June term, 1927, of the circuit court of Pike county, the purchaser, M. F. Dunlap, procured an order and judgment of said court confirming the master's report of sale vesting title of the premises so conveyed by certificate of purchase in M. F. Dunlap, subject only to the statutory right of redemption and that the judgment of the circuit court confirming the sale was filed September 9, 1927.

It is now contended by plaintiffs in error that the period of redemption having expired and defendant in error Dunlap, having purchased the lands under the former decree, which has been reversed, for the sum of $66,000, subject to the first mortgage, that defendant in error should be decreed the owner of said lands and be required to pay back to the plaintiffs in error, Charles M. Peirce and Ella B. Peirce, the owners of the equity in redemption, the difference between the sale price of the lands under the former decree, amounting to $66,000, and the amount of the indebtedness found against plaintiffs in error by this decree, amounting to the sum of $20,000, with interest thereon to the date of the decree, principal and interest amounting to the sum of $26,100.

In the court below in the accounting over the receivership, it was found that the receiver, in the payment of taxes, interest upon the first mortgage of $60,000 and other expenses, had paid and disbursed $27,665.85 more than he had taken in in receipts, which

by the decree was adjudged a part of the costs and provided by the decree to be paid out of the sale of the lands on foreclosure. Plaintiffs in error contend that the large portion of the disbursements, having been paid out by the receiver for the benefit of the defendant in error, Dunlap, after he became the owner of the land under the first foreclosure sale, should not be charged to plaintiffs in error or deducted in any manner from the sale of the lands.

The questions now raised in this case are as to the proper entry of the remanding order from the Supreme Court, the effect of the first foreclosure suit and sale thereunder, as set out, and the consideration of the receiver's report, if the same is before us for consideration. On an examination of the record we do not find that the receiver was made a party to this writ of error and therefore no question can be raised in this cause as to any of his accounts. *Haigh v. Carroll,* 197 Ill. 193.

This cause was reversed and remanded by the Supreme Court with specific directions to enter a decree as hereinbefore set out. It is the duty of the lower court to carry into execution the unambiguous mandate of the upper court as transmitted to it. The trial court must obey the mandate of the court of review. When a decree is reversed and the cause remanded, with specific directions, the court below has no discretion but must pursue the mandate of the Appellate Court and such proceedings cannot be assigned for error. When a case has been remanded with directions to do some act, the only course open to the lower court is to make effective the judgment of the higher court and the failure to do so would be reversible error. (*Muhlke v. Muhlke,* 285 Ill. 325; *Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. v. Gage,* 286 Ill. 213; *People v. Scanlan,* 294 Ill. 64; *Wolkau v. Wolkau,* 299 Ill. 176).

The effect of the reversal of the decree of the circuit court by the Supreme Court was to abrogate it and the cause stood in the circuit court precisely as it did before the entry of the decree. The decree was in effect expunged from the records and the parties to the litigation were restored to their original rights. The sale made by the master in chancery, pursuant to the decree of the circuit court, and the certificate of purchase issued by him to defendant in error Dunlap, were rendered null and void and abrogated and the order of the circuit court approving the report of sale of the master in chancery was likewise abrogated and expunged from the record. Dunlap, who was complainant in the suit, did not acquire any rights or interests by becoming the purchaser at such sale and receiving a certificate of purchase that was not abrogated by the subsequent reversal of the decree. Titles acquired by parties to the record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment. (Freeman on Judgments, section 481; *Ure v. Ure,* 223 Ill. 454, 463; *McJilton v. Love,* 13 Ill. 486.)

In *Ure v. Ure,* 223 Ill. 454, it was held,

"9. The effect of reversing the decree of January 4, 1892, was to abrogate it, and the cause stood in the circuit court precisely as it did before the entry of the decree. The decree was, in effect, expunged from the records and the parties to the litigation were restored to their original rights. (*McJilton v. Love,* 13 Ill. 486; *Chickering v. Failes,* 29 id. 294; *Cable v. Ellis,* 120 id. 136; *Aurora and Geneva Railway Co. v. Harvey,* 178 id. 477; Freeman on Judgments, sec. 481.) A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous

decree or judgment, he must, after reversal, make restitution, and if he has sold property erroneously adjudged to belong to him he must account to the true owner for the value. Titles acquired by parties to the record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment, but a different rule applies where a stranger to the proceeding, without notice, acquires rights under the decree before reversal. His title will not be affected. Innocent third parties have a right to rely upon a judgment or decree of a court having jurisdiction to pronounce it. They are not required to look beyond the question of jurisdiction, and if the decree is one which the court has jurisdiction to render both as to the subject matter and the parties, innocent purchasers acting in good faith will be protected, notwithstanding the subsequent reversal of the decree or judgment. *Montanye v. Wallahan,* 84 Ill. 355; *Thompson v. Frew,* 107 id. 478; *Crawford v. Thompson,* 161 id. 161.

"10. It follows from the rules above announced that the sale of lot J by Robert to John, being a transaction between the parties to the erroneous decree, must be set aside and the grantor must restore to the grantee the net proceeds received from such sale."

In *McJilton v. Love,* 13 Ill. 486, the court held:

"What was the effect of that reversal upon the rights of the parties? It restored the entry of satisfaction and left the judgment discharged of record. It exonerated Love from the payment of any part of the judgment to Field and Hall. It left the judgment in this State without the least foundation upon which to rest. The law is well settled that if a judgment is reversed, the parties are to be restored to their original rights, so far as it can be done without prejudice to third persons. If the plaintiff has derived any benefit from the judgment, he must make as full resti-

tution to the defendant as the circumstances of the case will permit. If he has received payment in money from the defendant, the latter can recover it back in an action of *indebitatus assumpsit*. If he has obtained money by the sale of the property of the defendant, the latter may recover it as so much money had and received to his use. If he has purchased property under the judgment, and still retains the ownership, the defendant may recover the specific property in the appropriate action. If he has aliened the property, he is responsible to the defendant for its value. But the rights of third persons are not affected. Their title to property acquired under an erroneous judgment is not divested by its reversal. In such case, the defendant must look to the plaintiff for redress. These principles are too well established by authority to require further discussion. *Bank of United States v. Bank of Washington,* 6 Peters, 8; *Clark v. Pinney,* 6 Cowen, 297; *Green v. Stone,* 1 Harris & Johnson, 405; *McLagan v. Brown,* 11 Ill. 519; *Steelman v. Cheeseman,* Pennington's Rep. 120; *Hubbel v. Broadwell's Administrator,* 8 Ohio 120.''

No title passes to a purchaser at a foreclosure sale until a deed is issued to him, and not then unless the deed is taken out by him within five years from the expiration of the time of redemption. Under section 16 of chapter 77 of the Revised Statutes, Cahill's St. ch. 77, ¶ 16, it is provided that at such sale the master in chancery shall give to the purchaser a certificate describing the premises purchased by him, showing the amount paid therefor, or if purchased by the person in whose favor the execution or decree is, the amount of his bid. By section 31 of said chapter it is provided that when the premises mentioned in any such certificate shall not be redeemed pursuant to law, the legal holder. of such certificate shall be entitled to a deed therefor at any time within five years from the expira-

tion of the time of redemption; and further provides that when such deed is not taken within the time limited by the act the certificate of purchase shall be null and void.

There can be no question but that in a proceeding between the parties to the suit and where the rights of third parties have not intervened, a reversal of a decree upon which a sale has been held cancels and renders null and void the sale. This covers the questions raised in this proceeding and finding no error in the decree of the circuit court of Pike county the decree is affirmed.

*Affirmed.*