THOMAS E. WALTON et al. Defendants in Error, vs.
W. B. MALCOLM et al. Plaintiffs in Error.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. DEEDS—*deed made by a person who has not been adjudged insane is not void.* A deed made by a person who has never been adjudged insane is not void, although it may be voidable, in a proper forum, in case such insanity is established.

2. EJECTMENT—*in Illinois only legal titles are tried in ejectment.* In Illinois only legal titles are triable in an action of ejectment and equitable titles are not considered.

3. SAME—*evidence of mental incapacity of grantor is not admissible in ejectment.* In Illinois, where the distinction between common law and chancery is maintained, it is not permissible, in an action of ejectment, to attack a deed, regular in form, upon the ground that the grantor, though he was never adjudged insane, was mentally incompetent to execute the deed, as the remedy in such case is in a court of equity, where the rights of all parties concerned may be adjusted and protected.

4. EVIDENCE—*recital of consideration is prima facie evidence that the grantor received the amount.* The recital of consideration in a deed is *prima facie* evidence that the grantor received the amount named.

5. STIPULATIONS—*what is not a waiver of right to object to admission of evidence.* A provision in a stipulation entered into by the parties after the beginning of an ejectment suit, to the effect that both parties waive the statutory right to new trial, is not a waiver by the defendants of the right to raise the question of the competency of evidence introduced to show that the grantor, in two of the deeds through which the defendants claim title, was mentally incompetent to make the deeds though he had never been adjudged insane.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

S. S. ANDERSON, and H. A. NEAL, for plaintiffs in error.

ALBERT C. ANDERSON, and CHARLES C. LEE, for defendants in error.

· Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action in ejectment in the circuit court of Coles county. Two suits were brought by defendants in error,—one against Marion Green and one against Homer Popham, they being tenants of the two pieces of property in question under plaintiffs in error. The two cases were consolidated, and a stipulation was entered into that the real parties in the case as plaintiffs were the sole heirs of Anderson Walton, deceased, named in the stipulation, and that the real parties interested as defendants were the only heirs-at-law of Malinda A. Walton, deceased, also named. This stipulation also provided that the defendants (plaintiffs in error) claimed title through a certain chain commencing with two deeds from Anderson Walton, and that the plaintiffs (defendants in error) claimed title to the real estate directly as heirs of Anderson Walton. The jury rendered a verdict in favor of defendants in error, and the court overruled the motion for new trial and entered judgment on the verdict. This writ of error has been sued out from that judgment.

Anderson Walton, at the time he executed the deeds here in question, was about eighty-five years of age and a resident of Charleston, Illinois. During his earlier life he had been in business and acquired a fair amount of property, mostly in farm land. He had six children by his first wife. Before the time the deeds were executed his first wife had died and he had married a second time. By his second wife he had no children. He and his second wife conveyed one of the tracts of real estate here in question to W. R. Patton and the other to Andrew B. Allison. At about the same time Patton and wife and Allison and wife conveyed the tracts to Malinda A. Walton, the second wife. Defendants in error, who are Anderson Walton's heirs, claim that these deeds did not pass title to the real estate therein described, for the reason that Walton was not of

sound mind at the time the deeds to Patton and Allison were executed. The deeds in question were prepared by George Dornblaser, a justice of the peace. There seems to be no question raised in the record as to their being executed in due form and without duress or undue influence, as those terms are understood in law. A number of witnesses were introduced on each side as to the mental condition of Walton at the time the deeds were made. These consisted of business and professional men in and about Charleston who had known him for many years. From the evidence it appears that Walton was often under the influence of liquor; that he had a horse of which he was very proud and drove it rather recklessly about the streets of Charleston and the public square; that he was continually trying to make public speeches to the by-standers, whether adults or children, if he could get them to listen to him. The import of his talks seems to have been rather rambling remarks about Washington, the Declaration of Independence and the speaker's views on politics, religion and ethics. The witnesses seem to agree that he was intoxicated a considerable portion of the time and when in that condition was unable to transact business intelligently. The witnesses for defendants in error, generally, testified that they thought Walton unable to transact business, whether intoxicated or sober, while those for the plaintiffs in error thought when sober he could transact ordinary business.

Counsel for defendants in error contend that the testimony shows that Walton was afflicted with senile dementia and arterio-sclerosis, brought on by advanced age and his intemperate habits. The chief contention of plaintiffs in error is, that in this action of ejectment the deeds of Walton could not be attacked by evidence as to his lack of competency to execute them; that if Walton was incompetent to execute the deeds the remedy was in equity and not on the law side of the court.

Under our statute every contract by a lunatic, after he is so found by a jury, is void as against him and his estate, but if made before, such finding may be avoided. (Hurd's Stat. 1913, chap. 86, secs. 14, 15, p. 1590.) Walton had never been found mentally incompetent by court proceedings. Under this statute and our decisions this deed was therefore voidable and not void. (*Scanlan* v. *Cobb,* 85 Ill. 296; *Ronan* v. *Bluhm,* 173 id. 277; *Peck* v. *Bartelme,* 220 id. 199; and to the same effect are 1 Devlin on Deeds, sec. 73, and 22 Cyc. 1196, and cases cited.) When a person has been declared a lunatic under this statute, such fact has been held a legal defense that can be urged to an action on a note executed by such lunatic after he had been adjudged mentally incompetent. (*McCormick* v. *Littler,* 85 Ill. 62.) But the question as to whether the defense of mental incapacity can be given in an action of ejectment when the person has never been found a lunatic under the statute has not been decided by this court. The authorities in other jurisdictions are in irreconcilable conflict on the question. They are reviewed at some length in *Smith* v. *Ryan,* 14 Ann. Cas. (N. Y. Ct. of App.) 505, and note. Some of the States where such evidence as to incompetency can be given in an action of ejectment are either under a code or those in which the distinction between common law and equity jurisdiction has not been maintained. In some of the States the deed of a person *non compos mentis* is held void,—not voidable,—as in *Farley* v. *Parker,* 6 Ore. 105. In some, where the distinction between common law and equity jurisdiction is followed, such evidence in an action of ejectment has been admitted without any discussion as to the question here involved. (*Eaton* v. *Eaton,* 37 N. J. L. 108.) Neither do the standard text writers agree on this subject. In Elliott on Contracts (vol. 1, sec. 383,) it is assumed that such evidence can be admitted in an ejectment suit, while Bigelow on Frauds (vol. 1, p. 76,) states that the purchaser under such

a deed cannot be expelled by an action in ejectment, as
that must be based on a "legal title:" Warvelle on Eject-
ment states (sec. 334) : "The better rule, and that which
is sustained by the volume of authority, is, that the deed
of an insane person whose incompetency has not been ju-
dicially determined is not void but voidable merely, and is
effectual to pass title, with all its incidents, if unassailed.
*  *  *  If the deed is regular in form and execution it
conveys the legal title, and its effect can be avoided, if at
all, only upon equitable grounds and by the introduction of
extrinsic proof. From this it follows that such a deed, in
the absence of statutory aid, cannot be avoided in an action
of ejectment but resort must be had for this purpose to a
court of equity, where the interests of all parties can be
protected." This doctrine is fully sustained by the courts
of Michigan, Maryland and Missouri. (*Moran* v. *Moran,*
106 Mich. 8; *Evans* v. *Horan,* 52 Md. 602; *McAnaw* v.
*Clark,* 167 Mo. 443.) The recent case of *Smith* v. *Ryan,*
*supra;* decided by the New York court of appeals, which
counsel for defendants in error deem decisive, cannot be
so held, for, as said in that opinion, in that State the code
of civil procedure in express terms authorizes the deter-
mination, in an action at law, of equitable defenses which
could not ordinarily be raised in a common law action of
ejectment.

It has repeatedly been said by this court that in actions
of ejectment legal titles, only, can be considered. In *Chini-
quy* v. *Catholic Bishop of Chicago,* 41 Ill. 148, it was said
(p. 155) : "Plaintiff was vested with the legal title, and
being so vested it must, at law, prevail against all and
every equity." In *Rountree* v. *Little,* 54 Ill. 323, the court
said (p. 325) : "The plaintiff in ejectment cannot recover
merely by showing an equity. If Groves has acquired the
legal title through either actual or constructive fraud, and
if the plaintiff is entitled to it, he must seek his remedy in
chancery." In *Fischer* v. *Eslaman,* 68 Ill. 78, in discussing

the evidence that could be admitted in an ejectment pro-
ceeding, it was stated (p. 82) : "We cannot deal with the
equities of the parties in this form of action. The plaintiff
must recover, if at all, upon the strength of his own title
and not upon the weakness of the defendant's. [Citing
authorities.] An equitable title forms no bar to a recovery
in ejectment, * * * and by necessary consequence would
not authorize a recovery in that form of action. The legal
title must prevail against every equity." In *Johnson* v.
*Watson,* 87 Ill. 535, it was stated (p. 540) : "Legal titles
must prevail in an action of ejectment. If a legal title
so acquired is challenged, it cannot be adjudicated in a
court of law but a court of chancery must be invoked. The
deed is not void but voidable only, and a court of chancery
may set it aside. Until that is done, it must, at law, pre-
vail." In *Esker* v. *Heffernan,* 159 Ill. 38, the court said
(p. 43) : "An action of ejectment being one at law and
not in equity, naked legal rights, and not equitable rights,
must prevail." In *McFall* v. *Kirkpatrick,* 236 Ill. 281, the
court, in discussing this question, said (p. 292) : "In eject-
ment legal titles, alone, can be considered and adjudicated,
and unless plaintiff showed a good legal title the judgment
was wrong, regardless of any question of equities."

Further quotations from decisions are unnecessary al-
though this general rule has repeatedly been sanctioned by
this court, among others in the following cases: *Franklin*
v. *Palmer,* 50 Ill. 202; *Wilson* v. *South Park Comrs.* 70 id.
46; *Kirkland* v. *Cox,* 94 id. 400; *People* v. *Force,* 100 id.
549; *Walton* v. *Follansbee,* 131 id. 147; *Grubbs* v. *Boon,*
201 id. 98; *People* v. *Chicago and Northwestern Railway
Co.* 239 id. 42. This same rule obtains in the Federal
courts. (*Foster* v. *Mora,* 98 U. S. 424; *Fenn* v. *Holme,*
62 id. 481; *Smith* v. *McCann,* 65 id. 398.) Some excep-
tions exist to this general rule. Wherever the distinction
between law and equity is preserved, the rule is familiar
that fraud in the execution of a deed may be given in evi-

dence in a trial at law, as, for example, where by misreading the deed to the grantor or the substitution of one paper for another, or by other device or trickery, the grantor was induced to execute it believing he was executing something else. It may also be provèd that what purports to be a deed is, in truth, not a deed but a forged instrument. *Escherick* v. *Traver*, 65 Ill. 379; *Windett* v. *Hurlbut*, 115 id. 403; *Reece* v. *Allen*, 5 Gilm. 236; *Kirkpatrick* v. *Clark*, 132 Ill. 342.

Counsel for defendants in error argue that this court has held that a minor, after becoming of age, may disaffirm a conveyance made during his minority by bringing an action of ejectment for the premises conveyed. (*Cole* v. *Pennoyer*, 14 Ill. 158; *Mette* v. *Feltgen*, 148 id. 357; *Sayles* v. *Christie*, 187 id. 420.) This seems to be the rule generally. (7 Ency. of Pl. & Pr. 290.) Counsel for plaintiffs in error argue that in the last two cases cited what is said on that subject was *obiter* and not necessary for the decision, and that in the first case it was assumed that this was the rule without discussion, while counsel for defendants in error argue to the contrary, and contend that by analogy the same rule ought to be applied in ejectment proceedings to lunatics. This question was raised in Missouri, and in *McAnaw* v. *Clark, supra,* the court held that the rules on this question applying to infancy had "no application to deeds by insane persons not under guardianship." Perhaps there is no branch of the law in which there have been so many conflicting decisions or such a change in the controlling rules as on the subject of contracts of infants. (See 16 Am. & Eng. Ency. of Law,—2d ed.—272, and cases cited.) In large measure there have been the same conflict and changes as to the contracts of insane persons. In many respects the law of contracts as to infants is similar to that of contracts made by insane persons, but no general rule can be laid down showing that it is necessary, or even wise, to have the same rule apply alike, in all cases

and under all circumstances, to both these classes of contracts.

The legal presumption in this jurisdiction is that all persons of mature age are sane, and this presumption continues until inquest found. (*Kelly* v. *Nusbaum*, 244 Ill. 158; *Titcomb* v. *Vantyle*, 84 id. 371.) Mere mental weakness, from whatever cause, which does not destroy the ability to comprehend the nature and extent of the transaction, in the absence of fraud, duress or undue influence, will furnish no ground for the avoidance of a contract. (*Kelly* v. *Nusbaum, supra; Fitzgerald* v. *Allen,* 240 Ill. 80; *Baker* v. *Baker,* 239 id. 82.) It is often difficult to determine what degree of mentality is sufficient to permit a person to make a good and valid deed. (Tiedeman on Real Prop.— 2d ed.—sec. 792.) A contract made with a lunatic in good faith, without any advantage taken of his position, and for his own benefit, is valid both in equity and at law, and where a conveyance or contract is made in ignorance of the insanity, with no advantage taken and in perfect good faith, a court of equity will not set it aside if the parties cannot be restored to their original position. (2 Pomeroy's Eq. Jur. sec. 946.) While there is no unanimity of opinion on the question of the purchase money being returned and placing the grantee in the same position he occupied before the execution of the deed, the true rule would seem to be that only in cases of fraud should the deed be set aside without a return of the consideration, but in cases where the deed was taken in good faith the grantee should be reimbursed. (1 Devlin on Deeds, sec. 76.) This is the rule in this State. *Burnham* v. *Kidwell,* 113 Ill. 425; *Peck* v. *Bartleme, supra.*

The reasons usually urged why a court of law, in ejectment proceedings, should not permit evidence of the person's mental incompetency is, that the interests of all the parties cannot be adjudicated in that proceeding as they can be adjusted and protected in a proceeding in equity.

In an ejectment proceeding the court can only find for the plaintiff or defendant. It cannot place the parties in their original position by settling the question of rents and profits or by inquiring into the question of consideration paid. A court of equity can do all these things and see that complete justice is done between the parties, according to the circumstances of the case.

Counsel for the defendants in error insist that there is no question of consideration in this case. The deeds recite consideration, and that recital is *prima facie* evidence that the grantor received the amount named. (*Howell* v. *Moores,* 127 Ill. 67; see, also, *Redmond* v. *Cass,* 226 id. 120.) However that may be here, in many cases of this kind consideration has been paid, and the question whether the transaction has been in good faith or is a fraud is often most difficult to determine. Such questions ordinarily can be much more satisfactorily settled in an equity proceeding than in an ejectment case at common law. Such procedure is in harmony with the general rule which has been in force so many years in this State, that in an action of ejectment legal titles, only, can be taken into consideration; equities are never considered. The exceptions to this general rule should not be enlarged so long as the two systems of jurisprudence,—equity and law,—prevail in this State. As this court has said in *Escherick* v. *Traver, supra,* on page 382: "The true and safer rule is to maintain the separate jurisdiction of law and equity and let each act in its respective sphere."

Counsel for the defendants in error further insist that plaintiffs in error waived the right to raise the question as to the admissibility of this testimony. As already stated, there was a stipulation filed in the consolidated cause after the two cases were instituted in the circuit court, the part which applies to this question reading: "It is further agreed that all of the parties to this suit will waive, and do waive, any right to the statutory right to a new trial,

and that none of the parties to this suit will claim a new trial under the statute. This, however, is no waiver of asking for a new trial by either party hereto for other reasons, such as erroneous instructions which might be given, or otherwise. It is further agreed between the parties hereto that the two cases above named shall be prosecuted to final judgment in the Coles county circuit court, and that the judgments rendered in this court, or such judgment as may be rendered in case of an appeal or writ of error issued out of the Supreme Court, shall be a final settlement of the controversy between the parties hereto as to the title to the land described in said declarations." Defendants in error selected their own forum and the suits were pending before this stipulation was made, hence there can be no question of estoppel. It appears from the record and briefs that a bill had been filed to set aside these deeds for incompetency of Walton and evidence was heard, and that after the chancellor had announced his decision the bill was dismissed. Under the statute, in an ejectment case either party has the right to a new trial simply upon payment of costs. We think a fair construction of that part of the stipulation referred to is that it was entered into to avoid the delay and expense of a second trial. There was no agreement that directly changed the rules of evidence and none affecting the jurisdiction of courts of equity or of law. The circuit court had jurisdiction to try an ejectment suit. No other court had such jurisdiction. We find nothing in the stipulation that tends, directly or indirectly, to uphold defendants in error's contention that plaintiffs in error waived the right to raise the question of the competency of this evidence. The trial court erred in admitting it.

What has already been said practically disposes of all the questions raised in the briefs.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*