John R. Hosty, Plaintiff-Appellee, Cross-Appellant, v. Robert J. Kroupa, Defendant-Appellant, Cross-Appellee.

Gen. No. 52,276.

First District, Fourth Division.

December 10, 1969.

L. Louis Karton & Raymond Roffi, of Chicago (L. Louis Karton, of counsel), for appellant.

John J. Casey, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

This action arises under an alleged option contract between plaintiff and defendant for the purchase by plaintiff of real estate owned in joint tenancy by defendant and his wife, Catherine. The trial court found

that a binding contract existed between plaintiff and defendant which defendant refused to honor, and assessed damages in the amount of $6,250. The trial court's order further provided that "defendant be directed not to convey any interest he has in any real estate or personal property he holds as holder of beneficial interest in a land trust until further order of Court." Defendant seeks reversal of the judgment on the ground that his wife was a necessary party to the contract and she never signed it. Plaintiff, in his cross-appeal, asks for additional damages.

Plaintiff testified that in the Summer of 1965 he observed a for-rent sign on the property located at 801–809 South Boulevard, Oak Park, and shortly thereafter contacted Baird & Warner, Inc. (hereinafter referred to as Baird), building managers of the property, concerning the rental. He was acting at that time on behalf of Sincere & Company, by whom he was employed as a stockbroker. In September, 1965, plaintiff, then acting on his own behalf, began negotiating with Baird's sales manager, Eugene Majewski, for purchase of that same property and another located nearby.

It is undisputed that Majewski drew up the option contract (which was introduced into evidence) for a purchase price of $75,000. The body of the contract contained the names Robert Kroupa and Catherine Kroupa in two separate clauses. It also indicated payment of the option consideration to "them," and that "Sellers" would pay a broker's commission. Robert J. Kroupa signed the document, but Catherine never did.

Plaintiff testified that he gave Majewski a $50 check, payable to Baird, as consideration for the option, and that he exercised his privilege of purchase under the option by letter dated October 18, 1965. He first learned of defendant's refusal to convey on October 29, 1965, at defendant's house when Mrs. Kroupa was present.

Plaintiff testified further that he had no idea where the ownership of the property lay, although he did see the names Robert and Catherine Kroupa clearly on the face of the option contract. He also realized that the $75,000 price contained in the contract was for the entire ownership of the property. Plaintiff was never shown or advised of the existence of any contract between the Kroupas and Baird with respect to the sale of this property. There was no for-sale sign on the building, but he assumed that Baird was not only the rental agent but also the sales agent for the property. On September 17, 1965, Majewski had sent him a letter stating that "Enclosed is a true copy of the option I now hold on the property. . . . I am also holding your check in the amount of fifty dollars ($50.00) as consideration for his option." Plaintiff explained that this letter was a partial basis for his belief that he had an option to buy, "despite the fact that the two main parties had not signed the option."

Continuing with plaintiff's testimony, the first time that he had physical possession of the option contract with Robert Kroupa's signature was in April, 1966. At that time, plaintiff had requested and received from Baird both the original signed copy of the option agreement and the $50 check which had been given as consideration.

Richard Cisek, supervisor of the sales-closing department of Baird, testified that he examined the company's files and found no agency contract between defendant and Baird authorizing the latter to sell defendant's property.

Eugene Majewski testified to the same effect as Cisek. Majewski also stated that he drew the option contract, with the names of both Robert and Catherine Kroupa in the body of the document. The unsigned option was then given to plaintiff to have his attorney look at it.

421

He assumed that plaintiff's attorney had looked at it because plaintiff returned it with a check for $50. Majewski then obtained defendant's signature on the contract, but Mrs. Kroupa was in Europe and he never got her signature. He testified that after defendant's signature was on the document, he believes he called plaintiff and told him that they were waiting until Mrs. Kroupa returned from a vacation to get her signature. Majewski was aware when he prepared the contract that ownership of the property was in joint tenancy. He was also under the impression that the option contract was intended to bear the signatures of both Kroupas. That was the reason he included both names in the contract. Both attorneys saw the contract and approved it. It was his understanding that he had to have the document executed by both Mr. and Mrs. Kroupa. Mrs. Kroupa refused to sign. The $50 consideration check was not given to defendant, but was kept at Baird's office.

Catherine Kroupa, defendant's wife, testified that she did not sign any option to sell the subject property which she owns with her husband in joint tenancy. She had signed a management agreement with Baird, but never authorized Baird to sell the property.

Defendant reiterated his wife's testimony. He signed the option contract at Baird's office and noticed that his wife's name was also on the contract. His attorney saw the contract before he did. Mrs. Kroupa did not at any time sign the contract. Plaintiff came to defendant's house several weeks after defendant had signed the contract and stated that he wanted to exercise his option. Mrs. Kroupa was there at the time and she told plaintiff that she did not care to sell. Defendant had previously asked Majewski whether the option contract was binding without both signatures, and had told him that his wife couldn't sign the contract to make it legal until she returned from her vacation in Ireland.

James Chrastka, defendant's attorney, testified that he had represented the Kroupas for about five years, and he had looked over the option contract. He advised defendant that "unless [Mrs. Kroupa] signs it, it is not operable." He told defendant to sign the contract, making certain that Baird would hold onto it "making it conditional on them." In his judgment, the legal consequences of Majewski's not submitting the contract to plaintiff would be to prevent the execution or completion of the option.

Several real estate appraisers testified as to the value of the subject properties.

The primary dispute concerning the option contract centers on the effect of Catherine Kroupa's refusal to affix her signature to the option contract. It is undisputed that both plaintiff and defendant signed the contract and that plaintiff, after paying $50 as consideration, indicated by letter that he desired to exercise his option. Both parties were aware that Catherine Kroupa's name appeared as one of the sellers of the property. Plaintiff contends the absence of her signature and the fact that she was a joint tenant of the property does not nullify defendant's contractual obligation. Defendant, on the other hand, argues that he did not intend to convey any property without the assent by signature of his wife and the fact that he alone signed, coupled with the nondelivery of the document, indicated that no binding contractual obligation with plaintiff had been created.

Plaintiff testified that he did not know that the Kroupas owned the property in joint tenancy, although he was aware that both names were on the contract. At one point in his testimony, he stated that a letter to him from Baird acknowledging receipt of his $50 consideration payment led him to believe that he had an

option to buy, despite the fact that the "two main parties had not signed the option." He was also cognizant that the $75,000 purchase price was for complete ownership of the property. Baird's sales manager, Majewski, testified that after getting defendant's signature on the contract, he believes he called plaintiff to tell him that they were waiting until Catherine Kroupa returned to get her signature.

■■ We can infer from this evidence that the plaintiff knew he was dealing with both owners for the entire property; that he was not misled as to the ownership of the property. Under these circumstances, without the signature of both owners, there can be no contract and, likewise, no breach to support an action for damages. See Madia v. Collins, 408 Ill 358, 362, 97 NE2d 313. Where only one of two or more co-owners contracts to sell, there can be no action for specific performance if the contracting parties contemplate the sale of all interest in the property. See Dineff v. Wernecke, 27 Ill2d 476, 482, 190 NE2d 308; Madia v. Collins, supra; Spadoni v. Frigo, 307 Ill 32, 138 NE 226. The rationale of these cases is analogous to the instant action for damages. We can find no evidence indicating that plaintiff treated defendant as a single contracting entity. The testimony reveals that plaintiff at all times was dealing with the Kroupas in the expectation that both would sign the option agreement as sellers. This action for damages therefore cannot lie, because the contract remained incomplete and there was never a binding contractual obligation entered into singly by defendant.

In addition to the expectation of the parties that both defendant and his wife were to sign the contract before a contractual obligation was to attach, the parties did not expect the contract to be delivered (which it was not), unless executed by Mrs. Kroupa. In support of his

contention that the contract should be held binding on defendant to the extent of the interest he is able to convey, plaintiff has cited cases which are nugatory in light of the above facts in the instant case. In both Heckmann v. Detlaff, 283 Ill 505, 119 NE 639, and Ennis v. Johnson, 3 Ill2d 383, 121 NE2d 480, the court found that a contract of sale executed by less than all the parties in interest was enforceable against those executing it, but each of these cases carefully excluded the situation where the contract was conditioned upon the consent of all interested parties. In our view of the evidence, the case at bar falls clearly within this exception.

In defendant's other citation, Cities Service Oil Co. v. Viering, 404 Ill 538, 89 NE2d 392, the subject contract described the lessors, a husband and wife, as "Lessor, jointly and severally." The court held that while only the husband had signed the lease, it was binding upon him as his several and separate contract. The difference in the language of that contract is so distinct from that employed in the contract before this court as to be obvious.

The judgment of the Circuit Court is reversed with judgment here for defendant. Plaintiff's cross-appeal for additional damages necessarily falls.

Reversed.

McNAMARA and STAMOS, JJ., concur.