# Illinois Official Reports

## Appellate Court

---

### *Harris v. Adame*, 2015 IL App (1st) 123306

---

| | |
|---|---|
| Appellate Court Caption | ROBERT F. HARRIS, Public Guardian of Cook County, and Plenary Guardian of the Estate and Person of Arthur Lynch, Petitioner-Appellee, v. JOSE A. ADAME, Respondent-Appellant (Professional National Title Network, Inc., an Illinois Corporation, James Brya, T&H Mortgage, Inc., Respondents).–NICHOLAS G. GRAPSAS, Administrator of the Estate of Arnold Lynch, Deceased, Petitioner-Appellee, v. JOSE A. ADAME, Respondent-Appellant (Professional National Title Network, Inc., an Illinois Corporation, James Brya, T&H Mortgage, Inc., Respondents). |
| District & No. | First District, Second Division<br>Docket Nos. 1-12-3306, 1-12-3307 cons. |
| Filed<br>Rehearing denied<br>Modified opinion filed | September 30, 2015<br>October 27, 2015<br>November 3, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 08-P-4696, 09-P-3544; the Hon. Lynne Kawamoto, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Masuda, Funai, Eifert & Mitchell, Ltd., of Chicago (Timothy J. Hammersmith and Gerald L. Morel, of counsel), for appellant.<br><br>Robert F. Harris, Public Guardian, of Chicago (Charles P. Golbert, Kass A. Plain, and Janet L. Barnes, of counsel), for appellee Robert F. Harris. |

Arnstein & Lehr LLP, of Chicago (Michael A. Abramson, Colleen A. Chinlund, and Julie A. Meyer, of counsel), for appellee Estate of Lynch.

Panel      PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Harris and Liu concurred in the judgment and opinion.


## OPINION

¶ 1   This action arose from the filing of two citation to recover assets petitions in the probate division of the circuit court of Cook County. One petition was filed by the guardian for a disabled person, Arthur Lynch. The other petition was filed by the administrator of the decedent estate of a disabled person, Arnold Lynch. The petitions alleged that prior to Arnold's death he was an adjudicated disabled person who, along with his brother Arthur, conveyed their home to a third party without approval from the probate court. The circuit court entered summary judgment on those petitions in favor of Arthur's and Arnold's estates, finding that the warranty deed (and thus the conveyance) is void in its entirety. The court ordered title to the home restored to the estates of Arthur and Arnold. The circuit court allowed the third party buyer, Jose Adame, to appeal.

¶ 2                 BACKGROUND

¶ 3   Arnold and Arthur were brothers who owned a home as joint tenants, each owning an undivided one-half interest. The home was encumbered by a mortgage. The brothers lived in the home until 2002, when, as a result of an auto accident, Arnold fell into a coma. On Arthur's petition, Arnold was adjudicated a disabled person and a guardian was appointed. Later that year, the probate court adjudicated Arnold incompetent and James Brya was appointed plenary guardian of Arnold's estate and person. Arnold eventually recovered but Brya remained his guardian.

¶ 4   Three years later, in 2005, Brya helped facilitate the sale of Arnold and Arthur's home to a third party, Jose Adame. Brya intended to sell his own home to Adame, however, he suggested to Adame that he also look at the Lynch property as an alternative. Brya then facilitated a viewing of the Lynch home. Adame and the Lynches' real estate agent negotiated the sale price. At the closing, Arthur and Arnold were represented by attorney Elizabeth Mann. Adame had his own attorney at the closing.

¶ 5   Professional National Title Network, Inc. (PNTN) prepared the title commitment policy issued to Adame. Elizabeth Mann, Arthur and Arnold's attorney, prepared and sent the title commitment packet to PNTN. The title commitment packet included a "Property Insight" form which showed Arnold's open guardianship case in probate court with an entry of "GDN OF THE EST & PERSON." This term is not explained by the parties, however, for the purpose of our decision we consider this sufficient to indicate the existence of a guardian of the estate and person of Arnold. The title commitment policy issued by PNTN made no reference to Arnold's probate estate.

¶ 6    In June 2005, Arthur and Arnold conveyed the home to Adame by way of a warranty deed. Adame obtained a mortgage from respondent, T&H Mortgage, Inc., using the property as security for the loan. Brya, Arnold's guardian, was present at the closing but did not sign the closing documents. The property sold for $145,000. The sale proceeds were used to pay off the brothers' mortgage. Pursuant to a letter of direction, signed by Arnold and Arthur, PNTN disbursed $34,750 to Brya and the remaining proceeds of $43,957.48 to Arnold and Arthur. Petitioners contend that Brya immediately took the $43,957.48 from Arnold and Arthur. The probate court was not informed of and did not approve the sale or the disbursement of the sale proceeds.

¶ 7    Ten months later, in April 2006, Arnold died intestate. Arthur is the sole surviving heir of Arnold's estate.

¶ 8    In July 2008, the Cook County public guardian petitioned for the appointment of a guardian for Arthur. In April 2009, Arthur was declared a disabled person and the public guardian was appointed plenary guardian over Arthur's estate and person.

¶ 9    In late 2009, the public guardian, as plenary guardian for Arthur, and the public administrator of Arnold's estate, filed separate citations to recover assets against Adame, Brya and PNTN. Relevant to this appeal, the petitions alleged that Brya took advantage of his position as Arnold's guardian and converted the proceeds of the real estate sale for his own use. The petitions sought an order declaring the entire 2005 conveyance void *ab initio*; restoring title to the estates of Arthur and Arnold; setting aside Adame's mortgage against the property; and entering judgment against Brya for the misappropriated funds.

¶ 10    Adame responded to the petition and argued that: he was a *bona fide* purchaser who paid valuable consideration for the property; he has continuously resided at the property since the closing; and if the sale is deemed void, he should be restored to his original position and repaid his purchase price plus all taxes, water bills and maintenance costs he has paid since the closing.

¶ 11    Petitioners jointly moved for summary judgment against Adame arguing that the warranty deed and conveyance are void on the sole basis that Arnold, a disabled person without the legal capacity to contract, personally executed the deed without previous court approval or guardianship involvement. Petitioners argued that Arthur's signature and conveyance appeared in the same warranty deed and, therefore, Arthur's conveyance to Adame is also void. Petitioners also argued that, based on the "property insight" form provided by Mann to PNTN (Adame's title insurer), Adame should be charged with notice of the public record that Arnold was adjudicated an incompetent person.

¶ 12    In the alternative, petitioners also sought judgment against PNTN for violating the Probate Act of 1975 (Act) (755 ILCS 5/1-1 *et seq.* (West 2008)) in "allowing the sale of the property to proceed" when PNTN was on notice of Arnold's disability and for disbursing the sale proceeds pursuant to a "Letter of Direction" signed by Arnold and Arthur.

¶ 13    The petitioners requested alternative relief from the circuit court, either: (1) enter judgment against PNTN for the funds misappropriated by Brya or (2) restore title in the home to the estates of Arnold and Arthur and divest Adame of his title in the property and remove Adame's mortgage lien against the property.

¶ 14    Adame responded to the motion for summary judgment arguing: he had no notice of Arnold's disability prior to the 2005 closing; he was a *bona fide* purchaser who paid fair

market value for the property; and petitioners have made no offer to restore him to his original position. Attached to his response was an affidavit wherein he averred that he was not aware of Arnold's probate case until this citation action; he acted in good faith when purchasing the property; based on Arthur's and Arnold's conduct at the closing, he had no reason to believe that either of the Lynch brothers were disabled persons; he hired an attorney to represent him in purchasing the property; Arnold and Arthur were represented by their own counsel during the sale; and he paid a fair purchase price for the property.

¶ 15     PNTN responded to the petitioners' motion by filing its own cross motion for summary judgment arguing that petitioners' damages were not proximately caused by PNTN.

¶ 16     On October 1, 2012, the circuit court held a hearing on the motions for summary judgment. At the hearing, the petitioners and Adame disputed whether Adame had either actual or constructive notice of Arnold's disability. The circuit court informed the parties that, because the determination of whether the conveyance was void did not depend on a finding of whether Adame was an innocent purchaser, the court would make that determination in separate proceedings, after the disposition of any appeal of its ruling on the validity of the conveyance.

¶ 17     On October 4, 2012, the circuit court granted petitioners' joint motion for summary judgment against Adame. The circuit court found that Arnold had no authority to execute the warranty deed and, because Arnold executed the same warranty deed as Arthur, the warranty deed as to both brothers is void in its entirety. The circuit court ordered title to the home restored to the estates of Arthur and Arnold. Rather than ruling on the issue of whether Adame was a *bona fide* purchaser or whether he is entitled to monetary relief, the circuit court left this issue unresolved and entered and continued the case generally.

¶ 18     As to the requested alternative relief, the circuit court granted petitioners' joint motion for summary judgment against PNTN, finding the judgment would not be entered "unless and until Respondent Jose Adame successfully appeals the judgment" against him. The court continued generally the remaining claims and issued a Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010)) finding only as to the entry of summary judgment against Adame. Adame timely filed this appeal. Accordingly, as a final order disposing of fewer than all of the parties' claims with other claims that remain undecided, we have jurisdiction pursuant to Rule 304(a) to review the judgment against Adame. *Revolution Portfolio, LLC v. Beale*, 332 Ill. App. 3d 595, 598 (2002).

¶ 19                              ANALYSIS

¶ 20     On appeal, Adame does not contest that Arnold's conveyance is void. Rather, he argues the circuit court erred in finding the entirety of the sale of property held in joint tenancy void *ab initio* and ordering the property be returned to the estates of Arthur and Arnold without compensation to Adame. After considering the parties' arguments and reviewing the record, we reverse the circuit court's judgment declaring the sale void in its entirety and find: (1) the sale as to Arnold's joint tenancy interest is void; (2) the sale of Arthur's joint tenancy interest is valid; and (3) Adame is a tenant in common with Arnold's estate. We remand this matter to the circuit court for proceedings to determine whether Adame is a *bona fide* purchaser entitled to a return of one-half of the purchase price attributed to the purchase of Arnold's interest in the property and, further, to determine whether Adame is entitled to monetary relief for the monies he paid for real estate taxes and other expenses to maintain the property attributed to Arnold's half interest in the property, including the share held by Arnold's estate, since 2005.

¶ 21    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). We review the circuit court's entry of summary judgment *de novo* and construe the record in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 22    Courts have a duty to protect the interests of a disabled person who is party to the judicial proceeding before it. *Perry v. Estate of Carpenter*, 396 Ill. App. 3d 77, 85 (2009). In protecting the interests of a disabled party, courts are vested with the power to order the return of property wrongfully removed from the estate. *Id*. The objective of a citation proceeding to recover assets in an estate matter is to recover property either in the possession of others or being concealed by others. *In re Estate of Joutsen*, 100 Ill. App. 3d 376, 380 (1981).

¶ 23                                    I. *Arnold's Conveyance*

¶ 24    Section 11a-22 of the Act provides that "[e]very note, bill, bond or other contract by any person for whom a plenary guardian has been appointed or who is adjudged to be unable to so contract is void as against that person and his estate." 755 ILCS 5/11a-22 (West 2008). Absent a court order directing a guardian to dispose of a ward's real property, an adjudicated incompetent person and his guardian have no power to convey any real property interest held by a disabled person's estate. *In re Guardianship of Mabry*, 281 Ill. App. 3d 76, 83 (1996); *In re Estate of Scheribel*, 340 Ill. App. 238 (1950). The record reveals that Arnold was adjudicated incompetent by the circuit court on May 8, 2002 and a plenary guardian was appointed to manage his estate and financial affairs. Three years later, Arnold, not his plenary guardian, personally executed the warranty deed for the sale of Arnold's one-half joint tenancy interest in the Lynch property to Adame, without prior approval by the probate court. Therefore, pursuant to the Act, the conveyance of Arnold's interest in the property to Adame is void as a matter of law.

¶ 25                                    II. *Arthur's Conveyance*

¶ 26    Next, we address the question of whether the circuit court erred in ruling that Arthur's conveyance to Adame is void. At the time of the real estate closing, Arthur had not yet been adjudicated a disabled person. Although contracts executed by a person later adjudicated disabled by the probate court may be voidable, upon proving mental incapacity to contract at the time of the transaction (*Burnham v. Kidwell*, 113 Ill. 425, 428-29 (1885); *White v. White*, 28 Ill. App. 2d 19, 27-28 (1960)), the petitioners pled that Arthur lacked capacity to convey to Adame, however, petitioners did not move to invalidate the sale on this basis when they moved for summary judgment. Consequently, this argument for invalidating Arthur's conveyance has been waived and we consider the petitioners' argument, adopted by the circuit court, that the entire transaction is void because Arthur and Arnold executed the same deed and conveyance documents. See *Cholipski v. Bovis Lend Lease, Inc.*, 2014 IL App (1st) 132842, ¶ 58 (it is well settled that issues "not raised in the trial court are considered waived on appeal" and will not be considered (internal quotation marks omitted)). On appeal, Adame contends that even though Arnold's conveyance is void, the entire transaction is not void and Arthur's conveyance of his undivided one-half joint tenancy interest to Adame is valid. We agree with Adame.

¶ 27    The parties do not cite any authority that holds that a void conveyance by one joint tenant renders the entire conveyance void as to the remaining joint tenant who contemporaneously executed the same conveyance document. However, petitioners assert that the ruling in *Ure v. Ure*, 223 Ill. 454 (1906) instructs that where a conveyance by one grantor is void, the entire sale of the property must be undone. In *Ure*, Robert Ure and his brother John inherited certain lots of land after the death of their mother. *Id.* at 458. In 1892, the circuit court entered a decree dividing the property between the brothers. *Id*. In 1897, Robert's wife petitioned the probate court of Cook County to appoint a conservator over Robert. *Id*. at 459-60. Three months later, the probate court declared Robert a drunkard and spendthrift and appointed a conservator over his person. *Id*. at 460. In 1898, Robert sold his interest in 15 lots to Eugene W. Yeomans. *Id*. Due to separate pending litigation over the division of the property, Yeomans brought an action to confirm the circuit court's 1892 division of property in an effort to enforce the sale contract with Robert. *Id*. at 460-61. The trial court found that Yeomans was an innocent purchaser and did not set aside Robert's conveyance. The supreme court reversed finding that, because the conveyance to Yeomans occurred after Robert's conservator had been appointed, the conveyance was void and must be set aside. *Id*. at 466. What is unclear from the *Ure* opinion is whether the conveyance was merely between Robert and Yeomans or whether the deed was also executed by Robert's wife. For example, the *Ure* court explained that "Yeomans exchanged three practically worthless equities in Chicago real estate with Robert for *his interest*" (emphasis added) (*id*. at 460), however, the court later described that same conveyance as "[t]he conveyance of Robert Ure and his wife to Eugene W. Yeomans." *Id*. at 465. Therefore, because it is unclear whether Robert's wife also executed the deed conveying the 15 lots to Yeomans we do not find *Ure* helpful in our disposition of this appeal. One aspect of *Ure*, however, is noteworthy: the disabled party sought to avoid performance under an agreement based on the disability where the opposing party sought enforcement of the agreement. Here, petitioners moved for summary arguing that Arthur's conveyance to Adame was void solely because Arnold executed the same conveyance documents. Notably, although petitioners pled Arthur's lack of capacity to convey, they did not move for judgment on the basis that Arthur's sale was otherwise invalid due to his own incapacity and, therefore, as previously stated, that issue was waived in the trial court.

¶ 28    Petitioners also cite *Jordan v. Kirkpatrick*, 251 Ill. 116 (1911) where our supreme court affirmed a judgment cancelling a mortgage executed by both a husband and wife where the trial court found the wife was "insane" at the time the mortgage was executed. In *Jordan*, George Jordan, the conservator of Minnie Arnold, filed an action to cancel a $1,000 note and mortgage executed by Minnie and her husband. *Id*. at 118-19. The conservator alleged that Minnie was a "distracted person and incapable of executing the note and mortgage." *Id*. at 118. Minnie's husband acted as her agent in procuring the loan and she received no consideration for the note and mortgage. *Id*. According to Jordan, Minnie's husband took the $1,000, "deserted her and left her destitute" immediately after obtaining the funds. *Id*. The trial court found that the mortgagee, Kirkpatrick, had no knowledge of Minnie's mental condition at the time the mortgage was executed. *Id*. at 119. The trial court further found that Minnie was "insane at the time the note and mortgage were signed" and received no benefit from the transaction because of her husband's actions. *Id*. at 120. The appellate court and the supreme court affirmed the trial court's decision to set aside the transaction. *Id*. Essentially in *Jordan*, Minnie was able to avoid the mortgage due to *her* incapacity. Here, Adame on appeal

essentially accepts the circuit court's finding that Arnold's sale is void and does not seek to enforce Arnold's sale to Adame. Rather, Adame argues that Arthur's sale is not void solely because Arnold signed the same conveyance documents. Considering the transaction as it relates to Arthur and Adame, there is no evidence and there was no factual determination made that supports declaring the sale of Arthur's interest to Adame void.

¶ 29    Neither the Act, nor recent case law address the situation at hand. Petitioners argue that this case is similar to *Dineff v. Wernecke*, 27 Ill. 2d 476 (1963) and *Hosty v. Kroupa*, 117 Ill. App. 2d 419 (1969), that support the conclusion that where one joint tenant (Arnold) does not execute an agreement to convey fee simple to a third party, the sale fails as to all joint tenants (Arthur). In *Dineff*, a prospective purchaser offered in writing to buy fee simple title of a home owned by a brother and sister. *Dineff*, 27 Ill. 2d at 479. Only the sister executed a letter accepting Dineff's offer. *Id*. The brother and sister later sold the property to a third party. *Id*. at 481. Dineff sued for specific performance to enforce the sale against both the brother and sister. *Id*. Dineff did not allege that he offered a separate price for each sibling's interest or request relief against the sister only. *Id*. at 482. The supreme court held that because both siblings did not sign the letter accepting Dineff's offer to purchase the sibling's interests as a unit, the alleged real estate sale contract was never formed because Dineff's intention was to buy the interests of both owners of the home. *Id*. at 481-82. Here, in the trial court, Arthur sought to avoid the sale by claiming defects applicable to Arnold, not himself. Because we find Arthur waived any argument that he lacked capacity, nothing in the record refutes that Arthur intended to convey his joint tenant interest to Adame and there is no evidence that supports invalidating that conveyance.

¶ 30    Similarly, in *Hosty*, we found that where the sale of property held in joint tenancy was conditioned on the purchase of all interest in the property "without the signature of both owners [on the real estate contract], there can be no contract." *Hosty*, 117 Ill. App. 2d at 424. The important point in *Hosty* is that the purchaser cannot obtain specific performance of the sale of property where only one of two owners signs the sale agreement. Adame acquired Arthur's interest and Arthur has offered no evidence that supports a finding that the conveyance between Arthur and Adame was invalid.

¶ 31    There are several distinctions we draw from these cases in comparison to the case on appeal. First, in *Ure*, the purchaser sought specific performance to enforce a disabled person's agreement to convey his interest in property. Here, Adame does not appeal from or argue that the circuit court erred in finding that Arnold's conveyance was void. However, Adame contends Arthur's conveyance of his own interest is not void merely because Arnold executed the same warranty deed that Arthur executed to convey his interest. Second, Adame is not seeking to enforce the warranty deed against both brothers. Unlike Yeomans in *Ure*, Adame did not file an action to enforce a conveyance of the entire property. For that same reason, *Dineff* and *Hosty* are distinguishable from the case before this court. Additionally, we note that this court has enforced a mortgage executed by only one joint tenant because the action was not brought against the entire property, but only against the mortgagor's undivided one-half interest. See *Cadle Co. II, Inc. v. Stauffenberg*, 221 Ill. App. 3d 267, 270-71 (1991). In distinguishing its holding from *Dineff*, the *Cadle* court observed that "[i]n *Dineff*, the plaintiff was attempting to enforce an agreement to convey the entire interest in the jointly held property without the signatures of both cotenants." *Id*. at 270.

¶ 32    In the instant case, unlike the underlying actions in *Ure*, *Dineff*, and *Hosty*, Adame is not seeking an enforcement of the warranty deed against all interests in the property, or against a party who did not execute the warranty deed. Rather, Adame correctly contends that he should not be divested of Arthur's interest because Arthur's conveyance was valid and Arthur did not present any evidence, other than Arnold's incapacity to convey Arnold's interest, to invalidate his conveyance to Adame.

¶ 33    Furthermore, the petitioners do not contest the validity of Arthur's conveyance based on his legal incapacity determined several years after the sale. Rather, the sole basis argued by the petitioners, and accepted by the circuit court, for invalidation of the entire sale was that the sale by Arthur was void because Arthur conveyed his interest in the same warranty deed as Arnold. This conclusion is in error. Therefore, we find that Arnold's legal incapacity to convey his interest did not restrict or impede Arthur's right to convey his interest in the property to Adame. The parties have not provided us with any case law, nor have we found any, that concludes that the conveyance by a joint tenant of his interest in real property (Arthur) is void merely because it occurred through a warranty deed in which a remaining joint tenant intended to convey his interest, but failed due to legal incapacity (Arnold).

¶ 34    "An indisputable right of each joint tenant is the power to convey his or her separate estate without the knowledge or consent of the other joint tenant and to thereby sever the joint tenancy, transforming it into a tenancy in common and extinguishing the right of survivorship." *Sathoff v. Sutterer*, 373 Ill. App. 3d 795, 797 (2007). Where part of a real estate sales contract can be performed, that part will be enforced even where another part of the contract is unenforceable or where part of the conveyance agreement fails. *Ennis v. Johnson*, 3 Ill. 2d 383 (1954); *Laegeler v. Bartlett*, 10 Ill. 2d 478 (1957); *Kuhn v. Sohns*, 324 Ill. 48, 54 (1926) (courts will enforce a part of a contract, which is capable of being performed even where "the contract as a whole is incapable of performance").

¶ 35    Here, Arthur executed the warranty deed and related conveyance documents prepared by his attorney who was also present at the closing. At that time, no guardian had been appointed over Arthur or his estate. Arthur's entire case hinged on the argument that Arnold's incapacity made the sale void *ab initio* with no meaningful argument made concerning Arthur's capacity to contract with Adame. There being no evidence to the contrary, Arthur's execution of a warranty deed in favor of Adame was an enforceable conveyance of his undivided joint tenancy interest in the home. Adame paid the agreed upon consideration and, in return, Arthur's (and Arnold's) mortgage lien was released and the net proceeds were paid out at Arthur's direction. Therefore, we find Adame purchased Arthur's interest for value. Although Arthur's estate claims that Brya converted sale proceeds and Arthur did not receive any payment from the sale of his interest, there remains no existing dispute between Arthur's estate and Adame regarding the validity of Arthur's conveyance. Any dispute concerning the disbursement of sale proceeds relate to other parties, not Adame, and those issues remain pending in the circuit court pursuant to its October 4, 2014 interlocutory order.

¶ 36                                    III. *After Acquired Title Doctrine*

¶ 37    Next, Adame argues that, in the event Arnold's conveyance is found to be void, he is the equitable holder of fee simple title because when Arnold died in 2006, Arthur inherited Arnold's interest in the property by right of survivorship. Adame asserts that when Arthur conveyed his one-half interest in 2005 and later inherited Arnold's one-half interest as

Arnold's surviving heir in 2006, this resulted in Adame acquiring equitable title in fee simple under the after-acquired title doctrine (765 ILCS 5/7 (West 2008)). Arthur's guardian asserts that Adame has waived review of this issue because it was not raised in the circuit court. However, Adame raised this issue in response to the joint motion for summary judgment and at the October 1, 2012 hearing. Therefore, we will address the merits of Adame's argument.

¶ 38　　　　The after-acquired title doctrine provides:

"If any person shall sell and convey to another, by deed or conveyance, purporting to convey an estate in fee simple absolute, in any tract of land or real estate, lying and being in this state, not then being possessed of the legal estate or interest therein at the time of the sale and conveyance, but after such sale and conveyance the vendor shall become possessed of and confirmed in the legal estate to the land or real estate so sold and conveyed, it shall be taken and held to be in trust and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance." *Id.*

¶ 39　　　　The after-acquired title doctrine applies where a grantor purports to convey good title to another party, for which the grantor had no title or imperfect title. *Tompkins State Bank v. Niles*, 127 Ill. 2d 209, 217 (1989). Here, the warranty deed provided that "Arthur, individually, and Arnold, individually *** for and in consideration of TEN & 00/100 DOLLARS, and other good and valuable consideration in hand paid, CONVEY(S) and Warrant(s) to Jose Adame, Individual *** all interest in the following described Real Estate." By signing the warranty deed, conveying "all interest," Arthur conveyed his then-existing legal or equitable interest to Adame. *Goodwine State Bank v. Mullins*, 253 Ill. App. 3d 980, 1009 (1993). In 2005, Arthur owned a one-half interest in joint tenancy in the Lynch property. There is no evidence in the record to suggest that Arthur either intended to or attempted to convey any interest other than his own one-half joint tenancy interest in the property to Adame. Nothing in the record supports a finding that Arthur intended to convey fee simple title, Arnold's joint tenancy interest or Arthur's future interest received at Arthur's death under right of survivorship. Therefore, Adame's argument that the after-acquired title doctrine applies fails because there is no evidence that Arthur attempted or intended to convey more than what he then owned.

¶ 40　　　　　　　　　　　　　　IV. *Status of Ownership*

¶ 41　　　　Having determined that (1) Arnold did not have the legal capacity to convey his interest in the property to Adame, (2) that Arthur conveyed his one-half joint tenancy interest to Adame, and (3) that Arnold's death did not trigger the doctrine of after-acquired title to vest fee simple title in Adame, we next consider the status of ownership of the property as framed by our decision.

¶ 42　　　　Prior to the 2005 closing, Arnold and Arthur held the property as joint tenants. A joint tenancy can be severed by the acts of one tenant without the knowledge or consent of the other. *Sathoff v. Sutterer*, 373 Ill. App. 3d 795 (2007). It is the indisputable right of each joint tenant to have the power to "convey his or her separate estate without the knowledge or consent of the other joint tenant and to thereby sever the joint tenancy." *Id*. at 797. A joint tenancy is severed "when only one joint tenant assigns his or her entire interest in the property." *In re Estate of Martinek*, 140 Ill. App. 3d 621, 630 (1986). Once a joint tenant's interest is conveyed to a third party, the unities of title and interest which are fundamental to a joint tenancy are destroyed

and the remaining tenant holds the property as a tenant in common with the third party. *Sathoff*, 373 Ill. App. 3d at 797.

¶ 43     Adame asserts that when Arthur conveyed his interest to Adame, Arthur severed the brothers' joint tenancy, creating a tenancy in common between Arnold's estate and Adame. Adame cites *Ennis v. Johnson*, 3 Ill. 2d 383 (1954), for the proposition that a joint tenancy is severed where one joint tenant executed a real estate sales contract to convey his interest with the mistaken belief that the second joint tenant would also convey their interest, but ultimately failed to do so.

¶ 44     In *Ennis*, our supreme court held that where only one joint tenant contracts to convey his interest by warranty deed as part of a sale of a fee simple interest, mistakenly believing the second joint tenant will also agree to convey her interest, the contract is enforceable against the first joint tenant, the joint tenancy is severed and tenancy in common is created between the second joint tenant and the buyer. In *Ennis*, a third party leased real property held in joint tenancy by a husband and wife. *Id*. at 383. The lease included a rider granting the lessee an option to purchase the property. *Id*. at 384. After the lessee took possession, a second rider was executed extending the lessee's option to purchase which set forth the terms of the purchase. *Id*. The lessee delivered to the husband a notice of election to exercise the option. *Id*. at 385. The husband acknowledged receipt of the election in a letter to the lessee. *Id*. The wife refused to participate in the conveyance and the lessee filed for specific performance to require the husband and the wife to convey their separate interests. *Id*. The trial court found the agreement enforceable against the husband's interest but not the wife's. *Id*. The supreme court affirmed finding that even though the husband was mistaken in believing that his wife would join in the conveyance, this did not excuse his failure to perform under the option contract. *Id*. at 387. The supreme court concluded that the husband exhibited an intent to sever the joint tenancy when he accepted the option election thereby obligating the husband to convey his interest by warranty deed. *Id*. By granting specific performance, the joint tenancy would be severed when the husband conveys his interest to the third party lessee. *Id*. The court noted that "[s]pecific performance of a contract to convey real estate may be granted as to whatever title the vendor may have in the property, with a proportionate abatement of the purchase price commensurate with the interest of the vendor in the whole." *Id*. at 388.

¶ 45     Here, similar to *Ennis*, the record supports the reasonable inference that when Arthur executed the warranty deed he intended to convey his interest in the property. Ordinarily the same inference would be made regarding Arnold's intention, however, Arnold did not have legal capacity to transfer his interest. Another inference is that Adame did not have notice that Arnold lacked legal capacity because no direct evidence adverse to Adame was offered on this score and the attempt to defeat Adame's interest in the property was limited to voiding the entire transaction because of Arnold's incapacity. Arnold and Arthur possessed separate joint tenancy interests in the property at the time of sale. Also, similar to *Ennis*, when Arthur conveyed his interest to Adame, Arthur severed the brothers' joint tenancy, leaving Arnold's estate and Adame as tenants in common in the property. In sum, we find that because Arthur's conveyance to Adame is valid, Arthur severed the brothers' joint tenancy at the time of Arthur's conveyance to Adame, creating a tenancy in common between the estate of Arnold and Adame.

¶ 46                           V. *Adame's Requested Relief*

¶ 47        Adame also argues that the circuit court erred in divesting him of title without considering whether he is entitled to reimbursement of the money he paid for the home and for other expenditures, including real estate taxes and maintenance costs, he has paid since the closing.

¶ 48        The parties disagree on the circuit court's holding on this issue. Petitioners argue that the circuit court correctly declined to return any money to Adame. Adame argues the opposite: the circuit court cannot divest him of title without considering whether Arnold's estate should return its one-half share of the purchase money Adame paid, and Adame should be reimbursed for expenditures on maintenance and real estate taxes since the closing which are attributed to Arnold's interest.

¶ 49        The record reveals the circuit court did not make a finding as to whether Adame was entitled to the return of any funds. At the summary judgment hearing, Adame's counsel argued that it was inequitable to return the property to the petitioners without considering Adame's affirmative defenses and without a determination of whether he is entitled to reimbursement. The circuit court disagreed stating, "[i]f [the sale] is void, it's void, and the contract is over. Bad faith I don't think [is an] issue. If it's void because he's (Arnold) a ward of the Court then Adame's bad faith would go perhaps to the remedy, but not as to the finding as to the summary judgment." The circuit court then asked petitioners' counsel whether they wanted a separate hearing regarding setoff for the mortgage and other payments made by Adame, but ultimately concluded that it would grant petitioners' requested remedy and permit Adame to file "subsequent motions for other relief" at a later date. The circuit court noted in its written summary judgment order that Adame's claim for reimbursement against Arnold's estate remained pending.

¶ 50        In restoring title to the estate of a disabled person from a void conveyance Illinois courts have concurrently considered claims by the buyer that he is a *bona fide* purchaser and entitled to repayment of the monies expended in exchange for lands. *Scanlan v. Cobb*, 85 Ill. 296 (1877); *Ure v. Ure*, 223 Ill. 454, 466 (1906); *Jordan v. Kirkpatrick*, 251 Ill. 116 (1911); *Walton v. Malcom*, 264 Ill. 389 (1914). Return of consideration paid to a disabled person for a void real estate conveyance is determined by whether the buyer was a *bona fide* purchaser or whether the buyer defrauded the disabled seller. See *Ure*, 223 Ill. at 466; *Jordan*, 251 Ill. at 122; *Walton*, 264 Ill. 389. "A *bona fide* purchaser is one who takes without notice of a prior claim or encumbrance." *Life Savings & Loan Ass'n of America v. Bryant*, 125 Ill. App. 3d 1012, 1019 (1984). Notice may be actual or constructive and "contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry." (Internal quotation marks omitted.) *Schaffner v. 514 West Grant Place Condominium Ass'n*, 324 Ill. App. 3d 1033, 1046 (2001). Generally, whether a party has acted in good faith is a question of fact. *Department of Transportation ex rel. People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 488 (2004); *Schaffner*, 324 Ill. App. 3d at 1046.

¶ 51        Here, the record establishes that the circuit court entered summary judgment on petitioners' claims and granted their requested remedy based on the erroneous ruling that the entire conveyance was void due to Arnold's incapacity. The court severed Adame's affirmative defenses alleging that he was a *bona fide* purchaser entitled to restitution. Because no finding was made on Adame's affirmative defenses, we remand this matter to the circuit court for proceedings to determine whether Adame is entitled to an abatement of any portion of

- 11 -

the purchase price from Arnold's estate as alleged and for the monies Adame paid attributed to Arnold's one-half interest in the property for maintenance, real estate taxes, mortgage payoff and other expenses paid at and subsequent to the 2005 closing. In short, the trial court should determine whether Adame, having paid full price for fee simple title, is entitled to a return of one-half the purchase price because he now owns one-half interest in the property and, if so, which party is obligated to make the repayment. Further, the court should also determine whether Adame is entitled to reimbursement for the share of real estate taxes and other expenses he paid since closing that would have been the obligation of Arnold's estate as a tenant in common with Adame.

¶ 52    Lastly, Adame argues that petitioners failed to name necessary parties to the litigation, the two mortgagees of the property and, therefore, the circuit court erred in granting summary judgment. However, because Adame failed to raise this argument in the circuit court he has waived consideration of this argument on appeal. *Palen v. Daewoo Motor Co.*, 358 Ill. App. 3d 649, 658 (2005) (an argument not raised in the trial court and presented for the first time on appeal is considered waived).

¶ 53                                          CONCLUSION

¶ 54    We reverse that part of the circuit court's summary judgment order declaring the 2005 warranty deed void in its entirety. Pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we find that Arnold's purported sale of his one-half joint tenancy interest to Adame is void because Arnold, acting on his own behalf, lacked the legal capacity to convey his interest. Further, we find that Arthur conveyed his one-half joint tenancy interest in the property to Adame for value at the 2005 closing, severing the Lynch brothers' joint tenancy and creating a tenancy in common with Adame and the estate of Arnold Lynch. As previously stated, we remand for further proceedings, including the determination of whether Adame is entitled to monetary relief as alleged in his pleadings. Based on our ruling and because the remainder of the October 4, 2012 order is interlocutory, nothing in this order should be interpreted to indicate that all or any portion of the October 4, 2012 order cannot be vacated, modified or amended. *Combs v. Schmidt*, 2012 IL App (2d) 110517, ¶ 40 (a trial court has the power to modify or vacate an interlocutory order granting summary judgment anytime prior to final judgment).

¶ 55    Affirmed in part and reversed in part; cause remanded.